1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

APPISTRY, INC.,                                      )
                                                     )
10                              Plaintiff,            )
                                                     )
11           v.                                       )        **Case No. _____**
                                                     )
12    AMAZON.COM, INC. AND AMAZON                     )        **PLAINTIFF'S COMPLAINT**
      WEB SERVICES, INC.,                             )
13                                                    )        **JURY TRIAL DEMANDED**
                                                     )
14                              Defendants.           )
                                                     )
15

16          Appistry, Inc. files this Complaint against Amazon.com, Inc. and Amazon Web

17  Services, Inc. (collectively "Amazon" or "Defendants") for infringement of U.S. Patent No.

18  8,682,959 (the "'959 patent") and U.S. Patent No. 9,049,267 (the "'267 patent") (collectively

19  the "Asserted Patents").

20                                    **THE PARTIES**

21          1.      Appistry, Inc. ("Appistry") is a Delaware corporation with its principal place of

22  business at 1141 South 7th St., Suite 300, St. Louis, Missouri 63104.

23          2.      Defendant Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with

24  its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

25          3.      Defendant Amazon Web Services, Inc. is a Delaware corporation with its

26  principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

27

PLAINTIFF'S COMPLAINT - 1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1

## JURISDICTION AND VENUE

2       4.     This is an action for patent infringement under Title 35 of the United States

3   Code.  Appistry is seeking injunctive relief as well as damages.

4       5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (federal

5   question) and 1338(a) (patents), because this is a civil action for patent infringement arising

6   under the United States patent statutes, 35 U.S.C. § 101 *et seq*.

7       6.     This Court has personal jurisdiction over Amazon.com because Amazon.com

8   has committed, and continues to commit, acts of infringement in the State of Washington, has

9   its principal place of business in the State of Washington, has conducted business in the State

10  of Washington, and/or has engaged in continuous and systematic activities in the State of

11  Washington.

12      7.     This Court has personal jurisdiction over Amazon Web Services, Inc. because

13  Amazon Web Services, Inc. has committed, and continues to commit, acts of infringement in

14  the State of Washington, has its principal place of business in the State of Washington, has

15  conducted business in the State of Washington, and/or has engaged in continuous and

16  systematic activities in the State of Washington.

17      8.     Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (c) and 1400(b) because

18  Defendants are deemed to reside in this district and/or have committed acts of infringement in

19  this district.

20  ## BACKGROUND

21      9.     Appistry, founded in 2001 in St. Louis, developed and owns all of the

22  intellectual property rights to an award-winning "fabric" computing technology that is

23  protected at least in part by the Asserted Patents (the "Appistry Technology").  The Appistry

24  Technology was a breakthrough technology in high performance computing.

25      10.    Appistry expended substantial investment to develop the Appistry Technology.

26  This investment resulted in a successful ongoing business, headquartered in St. Louis,

27

PLAINTIFF'S COMPLAINT - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

specializing in high performance computing (HPC) technology utilized in areas such as intelligence, defense, life sciences, financial services, and transportation.

11.     In 2004, Appistry contacted Amazon to offer Amazon a license to the Appistry Technology.  In an effort to engage in such discussions, Appistry and Amazon entered into a non-disclosure agreement drafted by Amazon.

12.     An initial meeting was held at Amazon's Seattle office in approximately August of 2004.  At that time, Appistry generally explained Appistry's capabilities, with a particular emphasis on the transactional reliability of the Appistry Technology.  Present at the initial in-person meeting were approximately three Appistry employees and approximately four Amazon employees.  The Amazon employees were identified as individuals involved in the development and engineering of Amazon's cloud services.

13.     At some point prior to September 14, 2004, Amazon indicated that it was interested in the Appistry Technology in connection with Amazon's business plans to offer a strategic business initiative central to Amazon's future.

14.     On or before September 14, 2004, Appistry informed Amazon that it had various patent applications pending on the Appistry Technology.

15.     Because of Amazon's expressed interest at the initial meeting, a second meeting was held on September 14, 2004 at Amazon's Seattle office.  Werner Vogels, Amazon's Director of Systems Research, was present at the second meeting along with approximately 10 to 12 of Amazon's senior technical engineers directly involved in Amazon's cloud services.

16.     The September 2004 meeting lasted approximately four hours.  During the course of the meeting, Amazon employees asked numerous, highly detailed questions about the functionality of the Appistry Technology.  Amazon's questions demonstrated Amazon's desire for a detailed understanding and knowledge of the Appistry Technology.

17.     Although Appistry was initially hesitant to disclose the minute details of the Appistry Technology, Mr. Vogels and other Amazon employees stated that Amazon would be skeptical of Appistry's technical abilities if Appistry did not disclose all of the details.  Mr.

PLAINTIFF'S COMPLAINT - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Vogels and other Amazon employees also stated that Amazon needed all of the details in order to fully evaluate the value of the Appistry Technology and to have faith in Appistry's engineers to build a quality system.

18.     Following the above statements from Mr. Vogels and other Amazon employees, Appistry disclosed very specific algorithms, flow charts, and branches in the decision tree of the Appistry Technology.  Amazon engineers asked many very specific questions about the Appistry Technology, which Appistry answered.  Appistry provided this information believing such disclosures were protected under the non-disclosure agreement with Amazon and under its pending patent applications.

19.     The level of detail provided to Amazon was sufficient to copy and build the Appistry Technology.

20.     Appistry demonstrated proof of concept of the Appistry Technology to various Amazon engineers and at least one Amazon development manager on September 15, 2004. This proof of concept demonstration included uploading certain portions of the Appistry Technology on Amazon computers to demonstrate the system.

21.     Subsequent to the September 2004 meetings, Appistry corresponded with Amazon in an effort to formalize the anticipated partnership with Amazon.  Initially, Amazon indicated its engineers were "evaluating" the Appistry Technology.  Eventually, Appistry learned that Amazon had no interest in licensing the technology.

22.     Subsequently, Appistry learned that Amazon had copied the Appistry Technology for various Amazon services.

23.     For example, Appistry learned that Amazon copied the Appistry Technology into Amazon's workflow systems such as Simple Workflow Service ("SWF").

24.     Upon information and belief, Appistry also copied the Appistry Technology into another internal workflow system called "Herd."  See Exhibit 17, printout of Amazon website advertising a job opening for its "Herd" team.  The "Herd" team offers "a workflow platform as part of the Distributing Computing Services (DCS) which many teams in the company have

PLAINTIFF'S COMPLAINT - 4

1   come to rely on for building scalable and highly available applications" and is "one of the

2   largest transactions processing systems inside Amazon and are used by teams such as Amazon

3   Ordering, Amazon Fulfillment systems, Kindle, Digital media teams, Merchant systems and

4   many more." "The Herd team is at the heart of the e-Commerce platform group which runs

5   THE largest e-Commerce platform in the world."

6       25.    Appistry believes that Amazon may have copied the Appistry Technology into

7   predecessor workflow systems after the 2004 meetings before copying the Appistry

8   Technology into SWF and Herd.

9   **THE ASSERTED PATENTS**

10       26.    Appistry incorporates paragraphs 1 through 25 herein by reference.

11       27.    Each claim of the Asserted Patents, attached hereto as Exhibits 1-2 and

12   incorporated herein by reference, claims a new and novel mechanism, system, and/or method

13   over the prior art for distributed computing. *See* Exhibit 3 attached hereto and incorporated

14   herein by reference, a declaration from Dr. Matthew Green, one of ordinary skill in the art of

15   the Asserted Patents, ¶ 13; Exhibit 16, 7/7/15 Green Decl., incorporated herein by reference,

16   ¶ 13.

17       28.    Each claim of the Asserted Patents claims a new, novel, specific, and inventive

18   mechanism, system, and/or method for distributed computing that overcomes problems of

19   previously existing platforms for mission-critical computing. Ex. 3, Green Decl., ¶ 14; Ex. 16,

20   7/7/15 Green Decl., ¶ 14.

21       29.    Each claim of the Asserted Patents claims a new, novel, specific, and inventive

22   mechanism, system, and/or method for distributed computing that enhances the capabilities of

23   prior art computers in order to solve computing-specific problems and improve how prior art

24   computers function. Ex. 3, Green Decl., ¶ 15; Ex. 16, 7/7/15 Green Decl., ¶ 15.

25       30.    For example, each claim of the Asserted Patents claims a new, novel, specific,

26   and inventive mechanism, system, and/or method for distributed computing that solves

27   problems in mission-critical computing that existed with prior art mainframes, high-availability

PLAINTIFF'S COMPLAINT - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  computers, Unix-based servers, distributed super computers, and personal computers (PCs).

2  Ex. 3, Green Decl., ¶ 17; Ex. 16, 7/7/15 Green Decl., ¶ 17.

3        31.    These prior art computing systems failed to provide acceptable levels of

4  performance and reliability for mission-critical computing, or did so at great expense and

5  complication.  Ex. 3, Green Decl., ¶ 18; Ex. 16, 7/7/15 Green Decl., ¶ 18.

6        32.    To achieve acceptable levels of performance and reliability for mission-critical

7  computing, these prior art computing systems required large numbers of highly trained

8  engineers, required custom hardware or components that were expensive and difficult to

9  maintain, were expensive and difficult to upgrade, and/or required expensive and hard-to-find

10  engineers.  Ex. 3, Green Decl., ¶ 19; Ex. 16, 7/7/15 Green Decl., ¶ 19.

11        33.    These are problems that arise specifically in the realm of distributed computing

12  and are specific to computers themselves.  Ex. 3, Green Decl., ¶ 20.

13        34.    Each claim of the Asserted Patents is rooted in computing technology in order to

14  overcome these problems specifically arising in distributed computing and claims a new, novel,

15  specific, and inventive mechanism, system, and/or method for distributed computing that

16  improves the functionality of computers themselves and results in improved levels of

17  performance and reliability for mission-critical computing without the associated cost and

18  complication attendant to prior art computing systems for mission-critical computing.  Ex. 3,

19  Green Decl., ¶ 21; Ex. 16, 7/7/15 Green Decl., ¶ 21.

20        35.    The significant inventive contribution of each claim of the Asserted Patents is

21  evidenced by, among other things, the fact that Amazon met with Appistry in 2004 to discuss

22  the Appistry Technology, including technology covered by the Asserted Patents, and thereafter

23  copied the Appistry Technology into its systems.  *See* paragraphs 9-25, which are incorporated

24  by reference herein.

25        36.    No claimed invention of the Asserted Patents exists in the prior art.  Ex. 3,

26  Green Decl., ¶ 22; Ex. 16, 7/7/15 Green Decl., ¶ 22.

27

PLAINTIFF'S COMPLAINT - 6

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

37.     No claim of the Asserted Patents is directed to command and control.  Ex. 3, Green Decl., ¶ 23; Ex. 16, 7/7/15 Green Decl., ¶ 23.

38.     No claim of the Asserted Patents is directed to project or resource management. Ex. 3, Green Decl., ¶ 23; Ex. 16, 7/7/15 Green Decl., ¶ 23.

39.     No claim of the Asserted Patents is directed to a fundamental economic concept or a conventional business practice, such as project or resource management or command and control.  Ex. 3, Green Decl., ¶ 23; Ex. 16, 7/7/15 Green Decl., ¶ 23.

40.     No claim of the Asserted Patents recites a mathematical concept or a mental process such as comparing or categorizing information that can be performed in the human mind, or by a human using a pen and paper.  The limitations of the claims of the Asserted Patents are not merely attempting to limit a mathematical algorithm, fundamental economic concept, conventional business practice, project or resource management, or command and control to a particular technological environment.  Instead, the claim limitations recite a specific application that improves the functioning of distributed computing itself.  *See* Ex. 3, Green Decl., ¶ 23.

41.     No claim of the Asserted Patents recites a mathematical concept such as a mathematical algorithm, mathematical relationship, mathematical formula or calculations.

42.     No claim of the Asserted Patents recites an idea of itself or a mental process such as comparing or categorizing information that can be performed in the human mind or by a human using a pen and paper.

43.     No claim of the Asserted Patents recites a method of organizing human activity such as managing relationships or transactions between people, social activities, and human behavior.

44.     The limitations of the claims of the Asserted Patents are not merely attempting to limit a method of organizing human activity or an idea of itself to a particular technological environment.

PLAINTIFF'S COMPLAINT - 7

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

45.     There is no non- or pre-computing analog for any claim of the Asserted Patents. Ex. 3, Green Decl., ¶ 24; Ex. 16, 7/7/15 Green Decl., ¶ 24.

46.     No claim of the Asserted Patents takes a practice known from the non- or pre-computing world and simply adds a requirement that it be practiced with computers. Ex. 3, Green Decl., ¶ 25; Ex. 16, 7/7/15 Green Decl., ¶ 25.

47.     No claim of the Asserted Patents utilizes a generic computer to apply a fundamental economic concept or conventional business practice. No claim of the Asserted Patents utilizes project or resource management or command and control or amount to no more than merely implementing the idea of project or resource management or command and control using generic computer components. Ex. 3, Green Decl., ¶ 26; Ex. 16, 7/7/15 Green Decl., ¶ 26.

48.     No claim of the Asserted Patents can be performed by humans. Ex. 3, Green Decl., ¶ 27; Ex. 16, 7/7/15 Green Decl., ¶ 27.

49.     Each claim of the Asserted Patents must be performed or implemented on computers. Ex. 3, Green Decl., ¶ 28; Ex. 16, 7/7/15 Green Decl., ¶ 28.

50.     The subject matter to which each claim of the Asserted Patents is directed is limited to computers; Ex. 16, 7/7/15 Green Decl., ¶ 29.

51.     No claim of the Asserted Patents is directed to subject matter that has an application outside of the realm of distributed computing. Ex. 3, Green Decl., ¶ 29; Ex. 16, 7/7/15 Green Decl., ¶ 30.

52.     Defendants admitted in their claim construction brief in a related case that "the Appistry patents claim a specific implementation of a distributed computing system." *Appistry, Inc. v. Amazon.com, Inc., et al.*, Case No. 2:15-CV-00311-MJP (W.D. Wash.), Dkt. # 103.

53.     Distributed computing itself is what each claim of the Asserted Patent improves upon. Ex. 3, Green Decl., ¶ 30; Ex. 16, 7/7/15 Green Decl., ¶ 31.

54.     No claim of the Asserted Patents is limited to or covers generic computer components that perform no more than their basic computer functions.   No claim of the

PLAINTIFF'S COMPLAINT - 8

1  Asserted Patents is limited to or covers activity by generic computer components that was well-

2  understood, routine, or conventional in the prior art, including in the prior art computing

3  systems.  Ex. 3, Green Decl., ¶ 31; Ex. 16, 7/7/15 Green Decl., ¶ 32.

4        55.     No claim of the Asserted Patents preempts the field of distributed computing.

5  No claim of the Asserted Patents preempts any fundamental economic concept or conventional

6  business practice.  Ex. 3, Green Decl., ¶ 32; Ex. 16, 7/7/15 Green Decl., ¶ 33.

7        56.     The limitations in each claim of the Asserted Patents when viewed as an ordered

8  combination were not routine, were not conventional, were not well-understood, were not

9  longstanding concepts, and were not fundamental practices in the art prior to September 7,

10 2002.  Ex. 3, Green Decl., ¶ 33; Ex. 16, 7/7/15 Green Decl., ¶ 34.

11       57.     Computers are capable of processing information in a distributed manner in

12 ways that are not covered by the asserted claims.  For example, many distributed computing

13 projects do not include the ability to perform multi-step processing jobs in which state

14 information is retained and updated between individual processing steps.  One notable example

15 of such a processing job was the "SETI At Home" system in which a single processing job –

16 the work of analyzing radio signals – was broken into many work units and distributed to

17 volunteer computers.  This task did not employ an ordered set of processing steps with state

18 information recorded and passed to the next computer, since in practice each individual

19 computer performed the same task repeatedly.  Similarly, the distributed site distributed.net

20 conducted a variety of large-scale computational efforts prior to 2002 in order to break various

21 cryptographic systems. Each of these examples contains a single task conducted by many

22 computers, and does not compute or distribute state information between each of these tasks.

23 Ex. 3, Green Decl., ¶ 34; Ex. 16, 7/7/15 Green Decl., ¶ 35.

24       58.     For example, one could perform distributed computing or run an application for

25 project or resource management or command and control on the prior art mainframes, high-

26 availability computers, Unix-based servers, distributed super computers, or personal computers

27

PLAINTIFF'S COMPLAINT - 9

1   (PCs) without infringing upon any claim of the Asserted Patents.  Ex. 3, Green Decl., ¶ 35; Ex.

2   16, 7/7/15 Green Decl., ¶ 36.

3       59.     Dr. Green's testimony confirms the above allegations and that the limitations of

4   the claims of the Asserted Patents were not routine or well-understood, were not longstanding

5   concepts, and were not fundamental practices at the time of the invention.

6       60.     Each claim of the Asserted Patents constitutes a breakthrough in the field of

7   distributed computing.

8       61.     The Appistry Technology, protected by the Asserted Patents, is used by dozens

9   of companies and has resulted in commercial success for Appistry.

10      62.     These companies use the Appistry Technology as a result of its breakthrough

11  improvements in field of distributed and mission-critical computing.

12      63.     For example, one customer decided to license the Appistry Technology after

13  spending years developing a new computing algorithm.

14      64.     Prior art computing solutions were not acceptable platforms for running this

15  algorithm.  Prior art computing systems would have taken far too long to run the algorithm and

16  could not adequately handle a failure.

17      65.     The customer therefore needed a distributed computing solution that could

18  handle its algorithm with acceptable levels of performance and reliability.

19      66.     Recognizing that the Appistry Technology was a significant improvement in the

20  field of distributed, mission-critical computing, the customer adopted the Appistry Technology,

21  which allowed the customer to execute the algorithm with the requisite levels of performance

22  and reliability.

23      67.     Amazon's own customers recognize the significant contribution of the Asserted

24  Patents and the Appistry Technology to the field of distributed and mission critical computing.

25      68.     Amazon's Simple Workflow Service ("SWF") is covered by the claims of

26  Asserted Patents and infringes the claims of the Asserted Patents, which protect the Appistry

27  Technology.

PLAINTIFF'S COMPLAINT - 10

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

69.     SWF is used by customers such as NASA, Sage Bionetworks, and RightScale.

70.     Testimonials and case studies for these customers confirm that the Asserted Patents provide a significant contribution to the field of distributed and mission critical computing.

71.     These testimonials and case studies are available on Amazon's website at the following locations: http://aws.amazon.com/swf/testimonials/; http://aws.amazon.com/swf/testimonials/swfsagebio/; and http://aws.amazon.com/swf/testimonials/swfnasa/ and are attached hereto as Exhibit 4-6 and incorporated herein by reference.

72.     For example, a case study for NASA's use of SWF shows that NASA "uses Amazon SWF as an integral part of several missions" and "to allow for the highest availability for mission critical systems."   Exhibits 4 and 6.

73.     As another example, a case study for Sage Bionetworks' use of SWF shows that SWF "is a key technology leveraged" in Sage Bionetworks' systems.  Exhibit 5.

74.     As a further example, a testimonial for RightScale shows that "RightScale uses Amazon SWF to drive their infrastructure automation offerings."  Exhibit 4.  "Using Amazon SWF we are able to reduce the time to market for our higher level infrastructure automation features. We are able to focus on our value-add without having to worry about the challenges that are associated with implementing a distributed workflow engine."  *Id.*

75.     Appistry has received awards and praise by others for the Appistry Technology, which validate its significant contribution to the field of distributed, mission-critical computing.

76.     For example, Appistry was selected in 2009 as finalist in the 22nd Annual CODiE Awards for the Appistry's CloudIQ platform, which is protected by the Asserted Patents.  *See* Exhibit 7 attached hereto and incorporated herein by reference.  Appistry's platform was chosen from more than 850 nominations submitted by 600 companies across 71 categories.  *Id.*

PLAINTIFF'S COMPLAINT - 11

77.    The CODiE Awards are a peer-recognized program that recognizes software and information companies for achieving excellence.  *See* Exhibit 8, attached hereto and incorporated herein by reference, available at http://www.siia.net/codies/2015/about.asp.

78.    Appistry was also named in 2009 as the winner of the American Business Awards in the category of "Most Innovative Company of the Year in Computer Software & Services Industries" for Appistry Technology protected by the Asserted Patents.  *See* Exhibit 9, attached hereto and incorporated herein by reference.

## ALLOWANCE OF THE '267 PATENT

79.    Appistry incorporates paragraphs 1 through 78 herein by reference.

80.    The United States Patent and Trademark Office ("USPTO") patent examiner who allowed the '267 patent considered whether each claim of the '267 patent claimed patent-eligible subject matter under 35 U.S.C. § 101.

81.    The patent examiner determined that that each claim of the '267 patent claimed patent-eligible subject matter and allowed each claim of the '267 patent.

82.    The '267 patent is related to the '746, '959, and '209 patents, each of which claims subject matter similar to the claims of the '267 patent.

83.    Attached as Exhibits 10 and 11 and incorporated herein by reference are the USPTO's 2014 Interim Eligibility Guidance Quick Reference Sheet (issued in December 2014) and the June 25, 2014 Preliminary Examination Instructions in View of the Supreme Court Decision in *Alice Corporation Pty. Ltd. V. CLS Bank International, et al.*, respectively.  The Interim Eligibility Guidance Quick Reference Sheet supplements the June 25, 2014 Preliminary Examination Instructions, as explained by the USPTO.  *See* http://www.uspto.gov/patent/laws-and-regulations/examination-policy/2014-interim-guidance-subject-matter-eligibility-0 (attached hereto as Exhibit 12 and incorporated herein by reference).

84.    The '267 patent was allowed by the examiner on April 16, 2015 and issued on June 2, 2015, after the USPTO issued its Preliminary Eligibility Instructions and Interim Eligibility Requirements for its patent examiners.  Attached as Exhibits 13 and 14 are the

PLAINTIFF'S COMPLAINT - 12

1   Notice of Allowance and Issue Notification for the '267 patent, both of which are incorporated

2   herein by reference.

3        85.     Upon information and belief, the patent examiner considered the Preliminary

4   Eligibility Instructions and Interim Eligibility Requirements before allowing each claim of the

5   '267 patent.

6        86.     The '267 patent was also allowed by the examiner on April 16, 2015 after the

7   examiner had before him Amazon's Motion for Judgment on the Pleadings of Invalidity Under

8   35 U.S.C. § 101, where Amazon argued that claims 1-5, and 23-27 of the '746 patent and

9   claims 1, 9-11, 13-15, 23, 26, 34, 37-39, 47, and 50-52 of the '209 patent were invalid because

10   they claim patent-ineligible subject matter under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank*

11   *Int'l*, 134 S. Ct. 2347 (2014).

12        87.     Upon information and belief, the patent examiner considered Amazon's

13   arguments that claims 1-5, and 23-27 of the '746 patent and claims 1, 9-11, 13-15, 23, 26, 34,

14   37-39, 47, and 50-52 of the '209 patent were invalid because they claim patent-ineligible

15   subject matter under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347

16   (2014).

17        88.     Attached as Exhibit 15 and incorporated herein by reference is the April 16,

18   2015 List of References Cited by Applicant and Considered by Examiner, which shows that the

19   patent examiner considered the pleadings from this litigation, which included Amazon's

20   Motion for Judgment on the Pleadings of Invalidity Under 35 U.S.C. § 101.

21   **NO PRIOR ART ANTICIPATES ANY CLAIMS OF THE ASSERTED PATENTS**

22        89.     Prior to the effective filing date of the Asserted Patents, September 7, 2002, no

23   prior art anticipated any claims of the Asserted Patents. Ex. 3, Green Decl., ¶ 36.

24        90.     Prior to the effective filing date of the Asserted Patents, September 7, 2002, no

25   prior art reference disclosed, either expressly or inherently, all of the limitations of the claims

26   of the Asserted Patents and no prior art system was known, in public use or on sale in the

27

PLAINTIFF'S COMPLAINT - 13

1   United States that contained all of the limitations of the claims of the Asserted Patents.  Ex. 3,

2   Green Decl., ¶ 37.

3        91.     One example of a prior art system is called "SETI@home." Ex. 3, Green Decl.,

4   ¶ 38.

5        92.     "SETI@home" is recognized as prior art in the Asserted Patents.  See, e.g., '959

6   Patent, Col. 3, Lines 19-59.  Ex. 3, Green Decl., ¶ 39.[1]

7        93.     "SETI@home" is described in Eric Korpela, et al., *SETI@home-Massively*

8   *Distributed Computing for SETI*, COMPUTING IN SCIENCE & ENGINEERING, January/February

9   2001, at 78.  As described in the article "SETI@home" was "the first attempt to use large-scale

10  distributed computing to perform a sensitive search for radio signals from extraterrestrial

11  civilizations."  This was done by dividing "a large dataset into small chunks that a personal

12  computer can analyze" and "[i]n this way, we can distribute the work to people willing to

13  donate their spare CPU cycles."  Ex. 3, Green Decl., ¶ 40.

14       94.     "SETI@home" did not contain all of the limitations of the claims of the

15  Asserted Patents.  Ex. 3, Green Decl., ¶ 41.

16       95.     Specifically, regarding independent claim 1 of the '959 Patent,  "SETI@home"

17  did not contain at least the following elements: the plurality of networked computers

18  comprising a request handler, a plurality of process handlers, and a plurality of task handlers;

19  the processing job comprising a process flow, the process flow including (1) a plurality of

20  processing tasks and (2) state information relating to the processing job; the request handler

21  configured to (1) receive a service request for the processing job, and (2) communicate data

22  representative of the processing job to a process handler; the process handler to which the

23  processing job data was communicated being configured to (1) receive the communicated

24  processing job data, and (2) analyze the processing job data and state information to determine

25  a sequence of processing tasks to be performed by the task handlers; the task handlers

26

27  [1] When quoting from the '959 patent herein, similar statements are made in both of the
    Asserted Patents.

PLAINTIFF'S COMPLAINT - 14

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  configured to (1) perform the processing tasks of the processing job in accordance with the

2  determined sequence, and (2) generate updated state information in response to the performed

3  processing tasks; wherein the request handler is further configured to (1) maintain state

4  information for the processing job based on the updated state information, (2) determine

5  whether a fault exists, and (3) in response to a determination that a fault exists, initiate a

6  recovery procedure based on the maintained state information for the processing job.  Ex. 3,

7  Green Decl., ¶ 42.

8      96.    Specifically, regarding independent claim 11 of the '959 Patent,  "SETI@home"

9  did not contain at least the following elements: receiving a service request for the processing

10  job, the processing job comprising a process flow, the process flow including (1) a plurality of

11  processing tasks and (2) state information relating to the processing job; the request handler (1)

12  receiving a service request for the processing job, and (2) communicating data representative of

13  the processing job to a process handler; the process handler to which the processing job data

14  was communicated (1) receiving the communicated processing job data, and (2) analyzing the

15  processing job data and state information to determine a sequence of processing tasks to be

16  performed by the task handlers; the task handlers (1) performing the processing tasks of the

17  processing job in accordance with the determined sequence, and (2) generating updated state

18  information in response to the performed processing tasks; the request handler (1) maintaining

19  state information for the processing job based on the updated state information, (2) determining

20  whether a fault exists, and (3) in response to a determination that a fault exists, initiating a

21  recovery procedure based on the maintained state information for the processing job.  Ex. 3,

22  Green Decl., ¶ 43.

23      97.    Specifically, regarding independent claim 21 of the '959 Patent,  "SETI@home"

24  did not contain at least the following elements: the request handler receiving a service request

25  for the processing job, the processing job comprising a process flow, the process flow including

26  (1) a plurality of processing tasks and (2) state information relating to the processing job; a

27  process handler coordinating an execution of the processing tasks by a plurality of the task

PLAINTIFF'S COMPLAINT - 15

1   handlers; the task handlers (1) executing the processing tasks, and (2) generating updated state

2   information for the processing job in response to the executing step; as the processing tasks are

3   executed by the task handlers, redundantly storing updated state information across a plurality

4   of different processes; determining whether a failure has occurred; and in response to a

5   determination that a failure has occurred, (1) retrieving a copy of the redundantly stored state

6   information, and (2) resuming the processing job in accordance with the retrieved state

7   information.  Ex. 3, Green Decl., ¶ 44.

8        98.    Specifically, regarding independent claim 27 of the '959 Patent,  "SETI@home"

9   did not contain at least the following elements: the plurality of networked computers

10   comprising a request handler, a plurality of process handlers, and a plurality of task handlers;

11   the processing job comprising a process flow, the process flow including (1) a plurality of

12   processing tasks and (2) state information relating to the processing job; the request handler

13   configured to (1) receive a service request for the processing job, and (2) communicate data

14   representative of the processing job to a process handler; the process handler to which the

15   processing job data was communicated being configured to (1) receive the communicated

16   processing job data, and (2) analyze the processing job data and state information to determine

17   a sequence of processing tasks to be performed by the task handlers; the task handlers

18   configured to (1) perform the processing tasks of the processing job in accordance with the

19   determined sequence, and (2) generate updated state information in response to the performed

20   processing tasks; wherein the process handler to which the processing job data was

21   communicated is further configured to (1) maintain state information for the processing job

22   based on the updated state information, (2) determine whether a fault exists, and (3) in response

23   to a determination that a fault exists, initiate a recovery procedure based on the maintained state

24   information for the processing job.  Ex. 3, Green Decl., ¶ 45.

25        99.    Specifically, regarding independent claim 28 of the '959 Patent,  "SETI@home"

26   did not contain at least the following elements: receiving a service request for the processing

27   job, the processing job comprising a process flow, the process flow including (1) a plurality of

PLAINTIFF'S COMPLAINT - 16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1  processing tasks and (2) state information relating to the processing job; the request handler (1)

2  receiving a service request for the processing job, and (2) communicating data representative of

3  the processing job to a process handler; the process handler to which the processing job data

4  was communicated (1) receiving the communicated processing job data, and (2) analyzing the

5  processing job data and state information to determine a sequence of processing tasks to be

6  performed by the task handlers; the task handlers (1) performing the processing tasks of the

7  processing job in accordance with the determined sequence, and (2) generating updated state

8  information in response to the performed processing tasks; the process handler to which the

9  processing job data was communicated (1) maintaining state information for the processing job

10  based on the updated state information, (2) determining whether a fault exists, and (3) in

11  response to a determination that a fault exists, initiating a recovery procedure based on the

12  maintained state information for the processing job.  Ex. 3, Green Decl., ¶ 46.

13      100.   Specifically, regarding independent claim 29 of the '959 Patent,  "SETI@home"

14  did not contain at least the following elements: the plurality of networked computers

15  comprising a request handler, a plurality of process handlers, and a plurality of task handlers;

16  the process handlers being resident on a plurality of different networked computers; the task

17  handlers being resident on a plurality of different networked computers; the processing jobs

18  having a plurality of associated process flows, the process flows including (1) a plurality of

19  processing tasks and (2) logic configured to define a relationship between the processing tasks

20  of the same process flow; the request handler configured to (1) receive a plurality of service

21  requests for the processing jobs, (2) store state information for the processing jobs, and (3)

22  select a plurality of process handlers from among the process handlers for servicing the

23  processing jobs; the selected process handlers configured to (1) analyze the state information

24  for the processing jobs to determine whether any processing tasks in the process flows remain

25  to be performed based on the logic for the process flows, (2) in response to the state

26  information analysis indicating that a processing task remains for the process flow of a

27  processing job, identify a processing task to be performed for the process flow having the

PLAINTIFF'S COMPLAINT - 17

1   remaining processing task, and (3) in response to the state information analysis indicating that

2   no processing tasks remain for the process flow of a processing job, determine that the

3   processing job corresponding to the process flow with no remaining processing tasks has been

4   completed; the task handlers configured to perform the identified processing tasks to generate a

5   plurality of task results, the task results causing an update to the state information for the

6   processing job.  Ex. 3, Green Decl., ¶ 47.

7        101.     As the dependent claims of the '959 Patent contain the limitations of the

8   independent claims above, for at least the same reasons identified above, "SETI@home" did

9   not contain all of the limitations of the dependent claims of the '959 Patent.  Ex. 3, Green

10  Decl., ¶ 48.

11       102.     Specifically, regarding independent claim 1 of the '267 Patent,  "SETI@home"

12  did not contain at least the following elements: the plurality of networked computers

13  comprising a request handler, a plurality of process handlers, and a plurality of task handlers;

14  the process handlers being resident on a plurality of different networked computers; the task

15  handlers being resident on a plurality of different networked computers; the processing jobs

16  having a plurality of associated process flows, the process flows including (1) a plurality of

17  processing tasks and (2) logic configured to define a relationship between the processing tasks

18  of the same process flow; the request handler configured to (1) receive a plurality of service

19  requests for the processing jobs, (2) store state information for the processing jobs, and (3)

20  communicate data relating to the processing jobs to a plurality of the process handlers; the

21  process handlers to which the data relating to the processing jobs were communicated being

22  configured to (1) analyze the state information for the processing jobs to determine whether any

23  processing tasks in the process flows remain to be performed based on the logic for the process

24  flows, (2) in response to the state information analysis indicating that a processing task remains

25  for the process flow of a processing job, identify a processing task to be performed for the

26  process flow having the remaining processing task, and (3) in response to the state information

27  analysis indicating that no processing tasks remain for the process flow of a processing job,

PLAINTIFF'S COMPLAINT - 18

1   determine that the processing job corresponding to the process flow with no remaining

2   processing tasks has been completed; the task handlers configured to perform the identified

3   processing tasks to generate a plurality of task results; and wherein the request handler is

4   further configured to store updated state information for the processing jobs, the updated stored

5   state information being based on the task results. Ex. 3, Green Decl., ¶ 49.

6       103.    Specifically, regarding independent claim 52 of the '267 Patent, "SETI@home"

7   did not contain at least the following elements: receiving a service request for a processing job,

8   the processing job having an associated process flow, the process flow including (1) a plurality

9   of processing tasks and (2) logic configured to define a relationship between the processing

10  tasks of the process flow; the plurality of networked computers comprising a request handler, a

11  plurality of process handlers, and a plurality of task handlers; the process handlers being

12  resident on a plurality of different networked computers; the task handlers being resident on a

13  plurality of different networked computers; wherein the executing step comprises: the request

14  handler storing state information for the processing job; the request handler communicating

15  data for the processing job to a process handler; the process handler to which the data for the

16  processing job was communicated (1) analyzing the state information for the processing job to

17  determine whether any processing task in the process flow remains to be performed based on

18  the logic for the process flow, (2) in response to the state information analysis indicating that a

19  processing task remains for the process flow, identifying a processing task to be performed, and

20  (3) in response to the state information analysis indicating that no processing task remains for

21  the process flow, determining that the processing job has been completed; the task handlers

22  performing the identified processing tasks to generate a plurality of task results; and updating

23  the stored state information based on the task results. Ex. 3, Green Decl., ¶ 50.

24      104.    Specifically, regarding independent claim 72 of the '267 Patent, "SETI@home"

25  did not contain at least the following elements: receiving a plurality of service requests for a

26  plurality of processing jobs, the processing jobs having a plurality of associated process flows,

27  the process flows including (1) a plurality of processing tasks and (2) logic configured to define

PLAINTIFF'S COMPLAINT - 19

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

a relationship between the processing tasks of the same process flow; the plurality of networked computers comprising a request handler, a plurality of process handlers, and a plurality of task handlers; the process handlers being resident on a plurality of different networked computers; the task handlers being resident on a plurality of different networked computers; wherein the executing step comprises: the request handler storing state information for the processing jobs; the request handler communicating data relating to the processing jobs to a plurality of the process handlers; the process handlers to which the data relating to the processing jobs were communicated (1) analyzing the state information for the processing jobs to determine whether any processing tasks in the process flows remain to be performed based on the logic for the process flows, (2) in response to the state information analysis indicating that a processing task remains for the process flow of a processing job, identifying a processing task to be performed for the process flow having the remaining processing task, and (3) in response to the state information analysis indicating that no processing tasks remain for the process flow of a processing job, determining that the processing job corresponding to the process flow with no remaining processing tasks has been completed; the task handlers performing the identified processing tasks to generate a plurality of task results; and updating the stored state information based on the task results. Ex. 3, Green Decl., ¶ 51.

105.    Specifically, regarding independent claim 123 of the '267 Patent, "SETI@home" did not contain at least the following elements: the plurality of networked computers comprising a request handler, a plurality of process handlers, and a plurality of task handlers; the process handlers being resident on a plurality of different networked computers; the task handlers being resident on a plurality of different networked computers; the processing jobs having a plurality of associated process flows, the process flows including (1) a plurality of processing tasks and (2) logic configured to define a relationship between the processing tasks of the same process flow; wherein the request handler is configured to (1) receive a plurality of service requests for the processing jobs, and (2) store state information for the processing jobs; wherein the process handlers are configured to volunteer for servicing the

PLAINTIFF'S COMPLAINT - 20

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

1  processing jobs based on their availabilities; wherein the request handler is further configured

2  to communicate data relating to the processing jobs to a plurality of the process handlers that

3  volunteered; wherein the process handlers to which the data relating to the processing jobs were

4  communicated are configured to (1) analyze the state information for the processing jobs to

5  determine whether any processing tasks in the process flows remain to be performed based on

6  the logic for the process flows, (2) in response to the state information analysis indicating that a

7  processing task remains for the process flow of a processing job, identify a processing task to

8  be performed for the process flow having the remaining processing task, and (3) in response to

9  the state information analysis indicating that no processing tasks remain for the process flow of

10  a processing job, determine that the processing job corresponding to the process flow with no

11  remaining processing tasks has been completed; wherein the task handlers are configured to

12  volunteer for performing tasks based on their availabilities; wherein a plurality of the task

13  handlers that volunteered are configured to perform the identified processing tasks to generate a

14  plurality of task results; wherein the request handler is further configured to store updated state

15  information for the processing jobs, the updated stored state information being based on the

16  task results. Ex. 3, Green Decl., ¶ 52.

17        106.    As the dependent claims of the '267 Patent contain the limitations of the

18  independent claims above, for at least the same reasons identified above, "SETI@home" did

19  not contain all of the limitations of the dependent claims of the '267 Patent.  Ex. 3, Green

20  Decl., ¶ 53.

21        **THE CLAIMS OF THE ASSERTED PATENTS ARE NOT OBVIOUS**

22        107.    The differences between the subject matter recited in the claims of the Asserted

23  Patents and the prior art are not such that the subject matter as a whole would have been

24  obvious before September 7, 2002 to a person having ordinary skill in the art in the field of

25  distributed computing.  Ex. 3, Green Decl., ¶ 54.

26        108.    A skilled artisan would not have had reason to combine the teaching of the prior

27  art, such as "SETI@home" which used PC's to perform distributed computing, to achieve the

PLAINTIFF'S COMPLAINT - 21

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

1   inventions recited in the claims of the Asserted Patents and/or would not have had a reasonable

2   expectation of success from doing so for at least the reasons noted in the '959 Patent, Col. 3,

3   line 42-Col. 4, Line18, including: "the problem with PC's is that they do not satisfy the needs

4   of businesses and other organizations when it comes to scalability, availability, and

5   predictability" and "few organizations even consider using PC's for mission-critical

6   computing." Ex. 3, Green Decl., ¶ 55.

7       109.    Secondary considerations of non-obviousness also show that the subject matter

8   recited in the claims of the Asserted Patents are not such that the subject matter as a whole

9   would have been obvious before September 7, 2002 to a person having ordinary skill in the art

10  in the field of distributed computing.  Ex. 3, Green Decl., ¶ 56.

11      110.    Long felt but unsolved need and failure of others support non-obviousness of the

12  claims of the Asserted Patents.  Ex. 3, Green Decl., ¶  57.

13      111.    For example, there was a demand for a reliable computing framework and

14  platform with improved levels of performance and reliability at a lower cost than prior art

15  solutions (see, e.g., '959 Patent, Col. 5, Lines 18-22), but, as noted in the specification of the

16  '959 Patent (Col. 1, Line 33 to Col. 5, Line 22) and the other Asserted Patents, others tried and

17  failed to satisfy that demand with a feasible solution.  Ex. 3, Green Decl., ¶ 58.

18      112.    Commercial success of products covered by claims of the Asserted Patents

19  supports non-obviousness of the claims of the Asserted Patents. Ex. 3, Green Decl., ¶ 59.

20      113.    Many of Appistry's customers use Appistry Technology that Appistry believes

21  is covered by claims of the Asserted Patents.  Ex. 3, Green Decl., ¶ 60.

22      114.    Industry recognition of Appistry's products covered by the claims of the

23  Asserted Patents supports non-obviousness of the claims of the Asserted Patents. For example,

24  Appistry was selected in 2009 as a finalist in the 22nd Annual CODiE Awards for the Appistry

25  CloudIQ platform, which Appistry believes is covered by claims of the Asserted Patents.

26  Appistry's platform was chosen from more than 850 nominations by 600 companies across 71

27  categories. Ex. 3, Green Decl., ¶ 61.

PLAINTIFF'S COMPLAINT - 22

115.    The CODie Awards are a peer-recognized program that recognizes software and information companies for achieving excellence.  Ex. 3, Green Decl., ¶ 62.

116.    Appistry was also named in 2009 as the winner of the American Business Awards in the category of "Most Innovative Company of the Year in Computer Software & Services Industries" for Appistry Technology protected by the Asserted Patents.  Ex. 3, Green Decl., ¶ 63.

117.    Amazon's interest in Appistry's products that Appistry believes are covered by the claims of the Asserted Patents supports non-obviousness of the claims of the Asserted Patents.  Ex. 3, Green Decl., ¶ 64.

118.    In 2004, Appistry contacted Amazon to offer Amazon a license to Appistry technology Ex. 3, Green Decl., ¶ 65.

119.    In 2004, meetings were held between Amazon and Appistry where Appistry disclosed very specific algorithms, flow charts, and other information about Appistry's patented technology to Amazon. Subsequent to the meetings, Appistry learned that Amazon had no interest in licensing the technology. Ex. 3, Green Decl., ¶ 66.

120.    Appistry believes that Amazon copied Appistry's product technology into Amazon workflow software/hardware systems such as Simple Workflow and Herd.  Ex. 3, Green Decl., ¶ 67.

121.    The patentability of the claims of the Asserted Patents is further supported by the Examiner's findings that the claims of the Asserted Patents are allowable and that "the prior art of record does not teach or suggest or render obvious …the independent claims [of the '959 Patent]." Ex. 3, Green Decl., ¶ 69.

## COUNT I
## (INFRINGEMENT OF U.S. PATENT NO. 8,682,959)

122.    Appistry incorporates paragraphs 1 through 121 herein by reference.

123.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

PLAINTIFF'S COMPLAINT - 23

124.     Appistry is the owner of the '959 patent, entitled "System and Method for Fault Tolerant Processing of Information via Networked Computers including Request Handlers, Process Handlers, and Task Handlers," with ownership of all substantial rights in the '959 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement.  A true and correct copy of the '959 patent is attached as Exhibit 1.

125.     The '959 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

126.     Amazon has and continues to directly infringe one or more claims of the '959 patent in this judicial district and/or elsewhere in the United States, including at least claim 29, without consent or authorization of Appistry, by or through importing, making, using, offering to sell, and/or selling products, devices, and/or distributed computing systems, including but not limited to Amazon's Amazon Elastic Compute Cloud ("EC2"), and workflow systems such as Simple Workflow Service ("SWF") and Herd that infringe at least claim 29 of the '959 patent.

127.     Appistry has been damaged as a result of Amazon's infringing conduct as described herein.  Amazon is, thus, liable to Appistry in an amount that adequately compensates Appistry for Amazon's infringement, which by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284.

128.     Amazon's actions complained of herein will continue unless Amazon is enjoined by this Court.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 9,049,267)

129.     Appistry incorporates paragraphs 1 through 128 herein by reference.

130.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

PLAINTIFF'S COMPLAINT - 24

131.    Appistry is the owner of the '267 patent, entitled "System and Method for Processing Information via Networked Computers including Request Handlers, Process Handlers, and Task Handlers," with ownership of all substantial rights in the '267 patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement.  A true and correct copy of the '267 patent is attached as Exhibit 2.

132.    The '267 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

133.    Amazon has and continues to directly infringe one or more claims of the '267 patent in this judicial district and/or elsewhere in the United States, including at least claim 1, without consent or authorization of Appistry, by or through importing, making, using, offering to sell, and/or selling products, devices, and/or distributed computing systems, including but not limited to Amazon's Amazon Elastic Compute Cloud ("EC2"), and workflow systems such as Simple Workflow Service ("SWF") and Herd that infringe at least claim 1 of the '267 patent.

134.    Appistry has been damaged as a result of Amazon's infringing conduct as described herein.  Amazon is, thus, liable to Appistry in an amount that adequately compensates Appistry for Amazon's infringement, which by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284.

135.    Amazon's actions complained of herein will continue unless Amazon is enjoined by this Court.

### WILLFUL INFRINGEMENT

136.    Appistry incorporates paragraphs 1 through 135 herein by reference.

137.    On information and belief, Defendants have a pattern and practice of meeting with inventors to obtain information regarding their inventions and then later copying the inventions.

138.    At least by September 2004, Amazon knew that Appistry had filed its applications for the Asserted Patents.

PLAINTIFF'S COMPLAINT - 25

139. Amazon willfully and deliberately copied the Appistry Technology, including technology covered by the Asserted Patents, thereby willfully and deliberately infringing the Asserted Patents.

140. Upon information and belief, Amazon has infringed and continues to infringe the Asserted Patents despite an objectively high likelihood that its actions constitute infringement of the Asserted Patents and a subjective knowledge or obviousness of such risk.

141. At least as early as June 18, 2015 or before, Amazon had knowledge of the Asserted Patents and continued to infringe the Asserted Patents.

142. In light of paragraphs 9 through 25 incorporated herein, including Amazon's actions related to copying and compliance with the parties' non-disclosure agreement and actions taken during and after the parties' meetings, Appistry intends to take discovery on the issue of willful infringement—including deliberate actions taken by Amazon to learn of the Asserted Patents or to avoid learning of the Asserted Patents—and, if warranted after such discovery, Appistry will seek to add allegations regarding willful blindness by Amazon in further support of Appistry's willful infringement allegations.

## ADDITIONAL ALLEGATIONS

143. Appistry has been damaged as a result of Amazon's infringing conduct described herein. Amazon is liable to Appistry in an amount that adequately compensates Appistry for Amazon's infringing conduct, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

144. Amazon's actions complained of herein will continue unless Amazon is enjoined by this Court.

145. This case is exceptional pursuant to the provisions of 35 U.S.C. § 285.

146. Appistry has complied with 35 U.S.C. § 287.

147. Amazon's actions complained of herein are causing irreparable harm and monetary damage to Appistry and will continue to do so unless and until Amazon is enjoined and restrained by this Court.

PLAINTIFF'S COMPLAINT - 26

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

1

## JURY DEMAND

2      Appistry hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of

3  Civil Procedure.

4

## PRAYER FOR RELIEF

5      Appistry requests that this Court find in its favor and against Amazon, and that this

6  Court grant Appistry the following relief:

7      a.    Enter judgment for Plaintiff on this Complaint;

8      b.    Enter judgment that one or more claims of the '959 patent has been infringed by

9             Amazon;

10     c.    Enter judgment that one or more claims of the '267 patent has been infringed by

11            Amazon;

12     d.    Enter judgment that Amazon's infringement was willful;

13     e.    Enter judgment that Amazon account for and pay to Appistry all damages to,

14            and costs incurred by, Appistry because of Amazon's infringing activities and

15            other conduct complained of herein;

16     f.    Award Plaintiff damages resulting from Amazon's infringement in accordance

17            with 35 U.S.C. § 284;

18     g.    Enter a permanent injunction enjoining Amazon and its offices, directors,

19            agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents,

20            and all others acting in active concert or participation with them, from infringing

21            or inducing infringement of the'959 patent and the '267 patent or, in the

22            alternative, judgment that Amazon account for and pay to Appistry a reasonable

23            royalty and an ongoing post judgment royalty because of Amazon's past, present

24            and future infringing activities and other conduct complained of herein;

25     h.    Grant Appistry pre-judgment and post-judgment interest on the damages caused

26            by Amazon's infringing activities and other conduct complained of herein;

27     i.    Treble the damages in accordance with the provisions of 35 U.S.C. § 284;

PLAINTIFF'S COMPLAINT - 27

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1     j.     Find the case to be exceptional under the provisions of 35 U.S.C. § 285; and

2     k.     Grant Appistry such other and further relief as the Court may deem just and

3     proper under the circumstances.

4    DATED: September 3, 2015          Respectfully submitted,

5         **LANE POWELL PC**

6         By:  *s/ Brian G. Bodine*

7         Brian G. Bodine, WSBA No. 22414
bodineb@lanepowell.com
Adriane M. Scola, WSBA No. 44478

8         scolaa@lanepowell.com
**LANE POWELL PC**

9         1420 Fifth Avenue, Suite 4200
P.O. Box 91302

10        Seattle, Washington 98111-9402
Telephone: 206.223.7000

11        Facsimile: 206.223.7107

12        Anthony G. Simon, #38745 MO
John G. Simon, #35231 MO

13        Benjamin R. Askew, #58933 MO
Timothy D. Krieger, #57832 MO

14        Michael P. Kella, #64284 MO
**THE SIMON LAW FIRM, P.C.**

15        800 Market Street, Suite 1700
St. Louis, Missouri 63101

16        Telephone:  314.241.2929
Facsimile:  314-241-2029

17        asimon@simonlawpc.com
jsimon@simonlawpc.com

18        baskew@simonlawpc.com
tkrieger@simonlawpc.com

19        mkella@simonalwpc.com

20        Robert T. Haar, #30044 MO
Colleen O. Zern, #66349 MO

21        **HAAR & WOODS, LLP**
1010 Market St., Suite 1620

22        St. Louis, Missouri 63101
Telephone:  314.241.2224

23        Facsimile:  314.241.2227
roberthaar@haar-woods.com

24        czern@haar-woods.com

25        *Attorneys for Plaintiff*

26

27

PLAINTIFF'S COMPLAINT - 28