THE HONORABLE RICHARD A. JONES

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| APPISTRY, INC., | Civil Action No. 2:15 -CV-1416-RAJ |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS FOR INVALIDITY UNDER 35 U.S.C. § 101** |
| vs. | |
| AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC., | NOTE ON MOTION CALENDAR: NOVEMBER 6, 2015 |
| Defendants. | |

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ)
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

I.    STATEMENT OF FACTS ............................................................................................ 3

   A.   The Appistry II Patents Claim the Same Distributed Processing as the Invalidated

       Appistry I Patents.................................................................................................. 3

   B.   Claim 29 of the '959 Patent and Claim 1 of the '267 Patent Are Representative of the

       Claimed Distributed Processing System ........................................................... 6

   C.   The Dependent Claims Add Nothing Inventive............................................... 11

II.   ARGUMENT ............................................................................................................. 13

   A.   Legal Standard .................................................................................................. 13

   B.   Appistry's Patents-in-Suit Are Invalid Under the *Alice* Test............................... 14

     i.   Appistry's Patents-in-Suit Are Directed to an Abstract Idea........................... 14

     ii.   The Patents-in-Suit Lack an Inventive Concept ......................................... 17

CONCLUSION.................................................................................................................... 20

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — i
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013)...........................................................................14

4

*Alice Corp. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014)......................................................................... passim

5

6

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    No. 1:10-cv-910, 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014)...........................3

7

*Appistry, Inc. v. Amazon.com, Inc.,*
    No. 2:15-CV-311-MJP, 2015 U.S. Dist. LEXIS 90004 (W.D. Wash. July 9,
    2015) ........................................................................................................2

8

9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................16

10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................16

11

*Chongris v. Bd. of Appeals,*
    811 F.2d 36 (1st Cir. 1987).................................................................................17

12

13

*In re Colonial Mortgage Bankers Corp.,*
    324 F.3d 12 (1st Cir. 2003).................................................................................17

14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
    776 F.3d 1343 (Fed. Cir. 2014)......................................................................... passim

15

16

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014)..............................................................................15

17

*Eclipse IP LLC v. McKinley Equip. Corp.,*
    No. CV 14-154, 2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sept. 4, 2014)...........................3

18

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015)..............................................................................10

19

20

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015)...............................................................................2

21

*Jericho Sys. Corp. v. Axiomatics, Inc.,*
    No. 3:14-cv-2281-K, 2015 U.S. Dist. LEXIS 60421 (N.D. Tex. May 7, 2015).......................3

22

23

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir. 1996) ..................................................................................17

24

25

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — ii
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015)..............................................................2, 14

*Open Text S.A. v. Box, Inc.,*
    No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309 (N.D. Cal. Jan. 20, 2015).........................3

*SAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014)..............................................................2, 18

*Shortridge v. Found. Constr. Payroll Serv., LLC,*
    No. 14-cv-04850-JCS, 2015 U.S. Dist. LEXIS 49126 (N.D. Cal. Apr. 14, 2015) ...................3

*TriPlay, Inc. v. WhatsApp Inc.,*
    No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *30 (D. Del. Apr. 28,
    2015), *adopted in all substantive respects*, 2015 WL 4730907 (D. Del. Aug. 10,
    2015) .....................................................................................................3

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014)..............................................................2, 14

*Versata Dev. Group, Inc. v. SAP Am., Inc.,*
    793 F.3d 1306 (Fed. Cir. 2015)..............................................................10

*Vidéotron Ltée. v. Bell ExpressVu Ltd. P'ship,*
    No. 500-17-027275-059 (Québec Super. Ct. July 23, 2012) ...........................16

*Wireless Media Innovations, LLC v. Maher Terminals, LLC,*
    Nos. 14-7004, -7006 (JLL), 2015 U.S. Dist. LEXIS 51811 (D.N.J. Apr. 20,
    2015) .....................................................................................................3

**Statutes**

35 U.S.C. § 101................................................................................... passim

**Rules**

Fed. R. Civ. Proc. 12.....................................................................2, 4, 14, 16

Fed. R. Civ. Proc. 12(b)(6) ....................................................................1, 3

Fed. R. Civ. Proc. 12(c) ........................................................................2, 3

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — iii
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1       Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Amazon.com, Inc. and

2 Amazon Web Services, Inc., move to dismiss the Complaint for invalidity of the patents-in-suit—

3 U.S. Patent Nos. 8,682,959 and 9,049,267—because they claim patent-ineligible subject matter

4 under 35 U.S.C. § 101.

5                       **PRELIMINARY STATEMENT**

6       On July 10, this Court invalidated two of Appistry's patents under 35 U.S.C. § 101 in

7 *Appistry, Inc. v. Amazon.com, Inc. and Amazon.com Web Services, Inc.*, Case No. 2:15-CV-311-

8 MJP.[1] That case has become known as Appistry I. Fifty-four days after the Court's order

9 invalidating the Appistry I patents, Appistry filed this case, alleging infringement of two other

10 related patents. This case has become known as Appistry II.

11       The Appistry II patents trace their lineage back to the same application as the Appistry I

12 patents.[2] The Appistry II patents have the same four inventors as the Appistry I patents.[3] The

13 Appistry II patents include the same figures as the Appistry I patents.[4] The Appistry II patents

14 include the same word-for-word "Detailed Description" of the invention as the Appistry I patents.[5]

15 The Appistry II patents cover the same subject matter as the Appistry I patents.[6] Most importantly,

16

17 [1] Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings; Dkt. No. 228 in Appistry I, Judgment.

18 [2] *See* Dkt. No. 1-1, U.S. Patent No. 8,682,959 ("'959 patent") at Related U.S. Application Data; Dkt. No. 1-2, '267 Patent at Related U.S. Application Data.

19 [3] *See* Dkt. No. 210 in Appistry I, Appistry's Motion for Leave to Amend Complaint at 3.

20 [4] *Compare* Figures of Appistry II patents, the '959 patent and U.S. Patent No. 9,049,267 (the "'267 patent"), *with* Figures in U.S. Patent Nos. 8,341,209 (the "'209 patent") and 8,200,746 (the "'746 patent").

21 

22 [5] *Compare* Detailed Description section of '959 and '267 patents, *with* Detailed Description section of '209 and '746 patents.

23 [6] *See* Dkt. No. 210 in Appistry I, Appistry's Motion for Leave to Amend Complaint at 3 (stating that the Appistry II patents "claim similar subject matter" and "protect the same Appistry Technology" as the Appistry I patents).

24                                        (continued...)

25

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ)  — 1
80371386.1 0053837-00608

the Appistry II patents are directed to the same abstract idea as their Appistry I parents:
"distributed processing akin to the military's command and control system."[7] And the patent
claims at issue here, like those in Appistry I, lack an inventive concept because they "do no more
than simply instruct the practitioner to implement the abstract idea of distributed processing akin to
command and control on generic computers, connected through generic networks."[8] Thus,
Appistry II should end as Appistry I did—the patents-in-suit, like those in Appistry I, should be
found invalid under the Supreme Court's *Alice* test for Section 101 patentable subject matter, and
their ideas returned to the public domain.[9]

    Indeed, in the 16 months since the Supreme Court's decision, five Federal Circuit cases[10]
and 50 district court cases[11] have invalidated patents under *Alice* at the Rule 12 stage and returned

---

(...continued)

[7] Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings at
4.

[8] *Id.* at 7.

[9] *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

[10] *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (affirming
dismissal for invalidity under Section 101 of claims directed to using a web browser's Back and
Forward navigational functionalities without data loss); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788
F.3d 1359 (Fed. Cir. 2015) (affirming judgment on the pleadings for invalidity under Section 101
of claims directed to automation of offer-based price optimization through the use of generic-
computer functions); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d
1343 (Fed. Cir. 2014) (affirming dismissal for invalidity under Section 101 of claims directed to
data collection, recognition, and storage using a scanner and computer); *Ultramercial, Inc. v. Hulu,
LLC*, 772 F.3d 709 (Fed. Cir. 2014) (affirming dismissal for invalidity under Section 101 of claims
directed to using advertising as an exchange or currency over the Internet using a computer); *buy
SAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming judgment on the pleadings
for invalidity under Section 101 of claims directed to creating a contractual relationship using a
computer and network).

[11] *See, e.g.*, *Appistry, Inc. v. Amazon.com, Inc.*, No. 2:15-CV-311-MJP, 2015 U.S. Dist. LEXIS
90004, at *6, *12 (W.D. Wash. July 9, 2015) (granting Rule 12(c) motion for invalidity under
Section 101 for patents directed to "distributed processing akin to the military's command and
control system" with "networked computers operating as task directors, mid-level managers, and

(continued...)

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1    those once-patented concepts to the public. Amazon respectfully requests that the patents-in-suit be

2    added to this long list.

3    **I.      STATEMENT OF FACTS**

4        **A.      The Appistry II Patents Claim the Same Distributed Processing
                as the Invalidated Appistry I Patents**

5

6            The patents-in-suit, the '959 and '267 patents, are child patents of the Appistry I patents,

7    the '209 and '746 patents. The '959 patent issued from a continuation of the application that

8    resulted in the '209 patent, which itself had issued from the application that resulted in the '746

9

10

---

11    (...continued)
    lower-level workers"); *Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14-cv-2281-K, 2015 U.S. Dist.
12    LEXIS 60421, at *8-9 (N.D. Tex. May 7, 2015) (granting Rule 12(c) motion for invalidity under
    Section 101 for a patent directed to a method to process requests to access resources using
13    computers); *TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at
    *30 (D. Del. Apr. 28, 2015) (recommending granting Rule 12(b)(6) motion for invalidity under
14    Section 101 for a claim directed to converting and forwarding messages using a computer, so that
    the messages are sent in a format and layout in which they can be received by a recipient), *adopted
15    in all substantive respects*, 2015 WL 4730907 (D. Del. Aug. 10, 2015); *Wireless Media
    Innovations, LLC v. Maher Terminals, LLC*, Nos. 14-7004, -7006 (JLL), 2015 U.S. Dist. LEXIS
16    51811, at *19 (D.N.J. Apr. 20, 2015) (granting Rule 12(b)(6) motion for invalidity under Section
    101 for patents directed to monitoring locations, movement, and status of resources and storing
17    and communicating this information through generic computer functions); *Shortridge v. Found.
    Constr. Payroll Serv., LLC*, No. 14-cv-04850-JCS, 2015 U.S. Dist. LEXIS 49126, at *3-4 (N.D.
18    Cal. Apr. 14, 2015) (granting Rule 12(c) motion for invalidity under Section 101 for a patent
    directed to using computers to provide alerts and reports allowing a contractor to choose
19    manpower options and provide evidence of managing the assignment of personnel"); *Open Text
    S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 6309, at *6 (N.D. Cal. Jan. 20,
20    2015) (granting Rule 12(c) motion for invalidity under Section 101 for patents directed to using a
    "workgroup creator" on a computer "for creating a dedicated network site in response to received
21    instructions"); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910 (LMB/TRJ), 2014
    U.S. Dist. LEXIS 152447, at *11-26 (E.D. Va. Oct. 24, 2014) (granting Rule 12(c) motion for
22    invalidity under Section 101 for patents directed to, *inter alia*, monitoring and reporting network
    resource usage); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154, 2014 U.S. Dist.
23    LEXIS 125395, at *21 (C.D. Cal. Sept. 4, 2014) (granting Rule 12(b)(6) motion for invalidity
    under Section 101 for claims directed to using a computer system to manage resources by asking a
24    resource to perform a task, and if it does not complete the task, asking another resource).

25

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 3
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

patent.[12] And the '267 patent issued from a continuation of the application that resulted in the '959 patent.[13] The four patents share the exact same figures and the exact same written description (aside from the "Summary" section).[14]

Like the Appistry I patents, the Appistry II patents cover a system of generic networked computers that communicate with each other to assign and coordinate tasks through a hierarchical structure.[15] The Appistry II patents assign a computer to receive incoming tasks, and then distribute those tasks among other computers for completion. The Appistry II patents use the same terminology as their parents, the Appistry I patents. As in Appistry I, that terminology is well illustrated by the example of the military's command and control system.

The claims of the Appistry II patents, like the '209 patent claims, use the terms "request handlers," "process handlers," and "task handlers."[16] In the military version of command and control, the "handlers" are soldiers. This can be seen in the following illustration, which Amazon presented at the Appistry I Rule 12 hearing:

---

[12] *See* Dkt. No. 1-1, '959 Patent at Related U.S. Application Data.

[13] *See* Dkt. No. 1-2, '267 Patent at Related U.S. Application Data.

[14] The "Field of the Invention," "Brief Description of the Drawings," and "Detailed Description" sections of all four patents are the same.

[15] *See, e.g.*, '959 patent at claim 1 & Abstract ("Systems and methods for processing information via networked computers [that] leverage request handlers, process handlers, and task handlers to provide efficient distributed and fault-tolerant processing of processing jobs."); '267 patent at claim 1 & Abstract ("Systems and methods for processing information via networked computers [that] leverage request handlers, process handlers, and task handlers to provide efficient distributed processing of processing jobs.").

[16] *E.g.*, *compare* '959 patent at claim 29 and '267 patent at claim 1, *with* '209 patent at claim 1.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 4
80371386.1 0053837-00608

# COMMAND AND CONTROL

**PATENTS: HIVE ENGINES**   **MILITARY: SOLDIERS**



**REQUEST HANDLER**   =   **COMMANDING OFFICER**

**PROCESS HANDLERS**   =   **SERGEANTS**

**TASK HANDLERS**   =   **PRIVATES**

In the patents, a "request handler" is the handler of a request, akin to a commanding officer who receives an order. In the parlance of the patents, the request handlers receive requests (or orders) to handle a "processing job."[17] The "processing job" may include multiple tasks that need to be performed in a specific sequence (i.e., a "process flow"), just like many military orders.[18] In the patents, the request handler chooses a "process handler" to handle the job.[19] In the army, an officer might choose a lower-ranking soldier, who is the process handler, to carry out the order. The process handler in the patents then assigns the individual tasks of which the order is comprised to "task handlers."[20] The task handlers in the patents complete the tasks, and update the status of the tasks, called "state information," to the process handler.[21] In the military, the soldiers complete

---

[17] *See, e.g.*, '959 patent at claim 29; '267 patent at claim 1.

[18] *See, e.g.*, '959 patent at claim 29; '267 patent at claim 1.

[19] *See, e.g.*, '959 patent at claim 29; '267 patent at claim 1.

[20] *See, e.g.*, '959 patent at claim 29; '267 patent at claim 1.

[21] *See, e.g.*, '959 patent at claim 29; '267 patent at claim 1.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 5
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1  their assigned tasks, and then report back to their commanding officer.

2       As in Appistry I, this system of distributed processing claimed by the patents-in-suit is

3  performed using standard, generic computers connected through a generic network. The Appistry

4  II patents and their Appistry I parent patents each defines the term "computer" as "used *generically*

5  herein to describe any number of computers, including, but not limited to personal computers,

6  embedded processing elements and systems, control logic, ASICs, chips, workstations,

7  mainframes, etc."[22] "Network" is similarly defined in all four patents to mean any kind of network:

8  "[T]he terms 'network' and 'communications mechanism' are used *generically* herein to describe

9  one or more networks, communications mediums or communications systems, including, but not

10 limited to the Internet, private or public telephone, cellular, wireless, satellite, cable, local

11 area...."[23] Thus, both the Appistry I and II patents claim any kind of computer connected to any

12 kind of network for distributed processing.

13       **B.    Claim 29 of the '959 Patent and Claim 1 of the '267 Patent Are
                Representative of the Claimed Distributed Processing System**

14

15       The Federal Circuit has explained that, in evaluating a Section 101 motion, a district court

16 may select one claim as representative of a patent if all the claims are "substantially similar and

17 linked to the same abstract idea," and focus its analysis on that claim.[24] Here, Appistry specifically

18 cites only two claims in its complaint: claim 29 of the '959 patent and claim 1 of the '267 patent.[25]

19 Amazon agrees that these claims are representative. Like the Appistry I patents, each of these

20 [22] *Compare* '959 patent at 8:47-51 and '267 patent at 9:1-5, *with* '746 patent at 7:49-53 and '209
   patent at 8:22-26 (emphasis added).

21
22 [23] *Compare* '959 patent at 9:12-17 and '267 patent at 9:33-38, *with* '746 patent at 8:14-22 and '209
   patent at 8:55-63 (emphasis added).

23 [24] *See Content Extraction*, 776 F.3d at 1348.

24 [25] *See* Dkt. No. 1 at ¶¶ 126, 133.

25
DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 6
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

claims describes a system of "request handlers," "process handlers," and "task handlers" that

process a "processing job" through the use of "tasks" and "state information." A comparison of the

language from representative claim 1 of the invalidated '209 patent to the representative claims of

the Appistry II patents shows that each patent claims this same basic system of distributed

processing, using the same terminology:

| Invalidated '209 Patent Claim 1 | '959 Patent Claim 29 |
|---|---|
| **A system for processing information**, the system comprising: | **A system for processing information**, the system comprising: |
| a plurality of networked computers for processing a **processing job** in a distributed manner, the plurality of networked computers comprising a **request handler**, a plurality of **process handlers**, and a plurality of **task handlers**, the processing job comprising a **process flow**, the process flow including (1) a plurality of processing tasks and (2) state information associated with the processing tasks; | a plurality of networked computers for processing a plurality of **processing jobs** in a distributed manner, the plurality of networked computers comprising a **request handler**, a plurality of **process handlers**, and a plurality of **task handlers**, the process handlers being resident on a plurality of different networked computers, the task handlers being resident on a plurality of different networked computers, the processing jobs having a plurality of associated **process flows**, the process flows including (1) a plurality of processing tasks and (2) logic configured to define a relationship between the processing tasks of the same process flow; |
| the **request handler** configured to (1) receive a service request for the processing job, (2) select a process handler from among the process handlers for servicing the processing job, and (3) communicate data representative of the processing job to the selected process handler; | the **request handler** configured to (1) receive a plurality of service requests for the processing jobs, (2) store state information for the processing jobs, and (3) select a plurality of process handlers from among the process handlers for servicing the processing jobs; |
| the selected **process handler** configured to (1) receive the communicated data, (2) analyze the state information for the processing job, (3) based on the analyzed state information, determine whether (i) there | the selected **process handlers** configured to (1) analyze the state information for the processing jobs to determine whether any processing tasks in the process flows remain to be performed based on the logic for the |

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 7
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

| | |
|---|---|
| is a next processing task in the processing flow to be performed or (ii) the processing job has been completed, (4) in response to a determination that there is a next processing task within the processing flow to be performed, identify the processing task to be performed as the next processing task, (5) repeat the state information analysis operation, the determination operation based on the analyzed state information, and the identification operation until a determination is made based on the analyzed state information that the processing job has been completed, and (6) in response to a determination that the processing job has been completed, communicate a processing result for the processing job to the request handler; and | process flows, (2) in response to the state information analysis indicating that a processing task remains for the process flow of a processing job, identify a processing task to be performed for the process flow having the remaining processing task, and (3) in response to the state information analysis indicating that no processing tasks remain for the process flow of a processing job, determine that the processing job corresponding to the process flow with no remaining processing tasks has been completed; and |
| at least one of the **task handlers** configured to (1) receive an identified processing task, and (2) perform the received processing task to generate a task result, the task result including updated state information for the processing job. | the **task handlers** configured to perform the identified processing tasks to generate a plurality of task results, the task results causing an update to the state information for the processing job. |

| Invalidated '209 Patent Claim 1 | '267 Patent Claim 1 |
|---|---|
| **A system for processing information**, the system comprising: | **A system for processing information**, the system comprising: |
| a plurality of networked computers for processing a **processing job** in a distributed manner, the plurality of networked computers comprising a **request handler**, a plurality of **process handlers**, and a plurality of **task handlers**, the processing job comprising a **process flow**, the process flow including (1) a plurality of processing tasks and (2) state information associated with the processing tasks; | a plurality of networked computers for processing a plurality of **processing jobs** in a distributed manner, the plurality of networked computers comprising a **request handler**, a plurality of **process handlers**, and a plurality of **task handlers**, the process handlers being resident on a plurality of different networked computers, the task handlers being resident on a plurality of different networked computers, the processing jobs having a plurality of associated **process flows**, the process flows |

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

| | |
|---|---|
| | including (1) a plurality of processing tasks and (2) logic configured to define a relationship between the processing tasks of the same process flow; |
| the **request handler** configured to (1) receive a service request for the processing job, (2) select a process handler from among the process handlers for servicing the processing job, and (3) communicate data representative of the processing job to the selected process handler; | the **request handler** configured to (1) receive a plurality of service requests for the processing jobs, (2) store state information for the processing jobs, and (3) communicate data relating to the processing jobs to a plurality of the process handlers; |
| the selected **process handler** configured to (1) receive the communicated data, (2) analyze the state information for the processing job, (3) based on the analyzed state information, determine whether (i) there is a next processing task in the processing flow to be performed or (ii) the processing job has been completed, (4) in response to a determination that there is a next processing task within the processing flow to be performed, identify the processing task to be performed as the next processing task, (5) repeat the state information analysis operation, the determination operation based on the analyzed state information, and the identification operation until a determination is made based on the analyzed state information that the processing job has been completed, and (6) in response to a determination that the processing job has been completed, communicate a processing result for the processing job to the request handler; and | the **process handlers** to which the data relating to the processing jobs were communicated being configured to (1) analyze the state information for the processing jobs to determine whether any processing tasks in the process flows remain to be performed based on the logic for the process flows, (2) in response to the state information analysis indicating that a processing task remains for the process flow of a processing job, identify a processing task to be performed for the process flow having the remaining processing task, and (3) in response to the state information analysis indicating that no processing tasks remain for the process flow of a processing job, determine that the processing job corresponding to the process flow with no remaining processing tasks has been completed; and |
| at least one of the **task handlers** configured to (1) receive an identified processing task, and (2) perform the received processing task to generate a task result, the task result | the **task handlers** configured to perform the identified processing tasks to generate a plurality of task results; and wherein the request handler is further |

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

| | |
|---|---|
| including updated state information for the processing job. | configured to store updated state information for the processing jobs, the updated stored state information being based on the task results. |

As this comparison shows, while the claims of the Appistry II patents largely parrot the language of invalidated claim 1 of the '209 patent, there are a few elements that appear in the representative Appistry II claims but not claim 1 of the invalidated '209 patent. None of these additional elements are inventive. The element "logic configured to define a relationship between the processing tasks of the same process flow," which is an abstraction itself, performs the same function as an order in the military setting forth a sequence for specific tasks to be completed. And the elements requiring that the process handlers reside on different computers and the task handlers reside on different computers are akin to the military using troops based on location or unit. Finally, the elements requiring the request handler to store state information or updated state information describe the same concept as an officer in the military maintaining information on the status of the completion of orders.[26]

Like claim 1 of the '267 patent and claim 29 of the '959 patent, the remaining independent claims of the Appistry II patents cover the same abstract idea of distributed processing. Claims 11, 21, and 28 of the '959 patent and claims 52 and 72 of the '267 patent claim methods for processing information using the system claimed in the representative claims, including the three "handlers." The other independent claims cover the same system for processing information using the three "handlers," and add only routine and conventional aspects of distributed processing. Claims 1 and

---

[26] Moreover, the Federal Circuit has repeatedly held that storing information is not patent-eligible. *See, e.g.*, *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) (affirming invalidity under Section 101 of claims directed to, *inter alia*, "storing pricing information"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1365 (Fed. Cir. 2015) (affirming invalidity under Section 101 of claims directed to "tracking and storing information"); *Content Extraction*, 776 F.3d at 1348 (affirming invalidity under Section 101 of claims directed to, *inter alia*, "storing [] information in a memory").

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ)  —  10
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

27 of the '959 patent add the limitation that if an error or fault occurs, then the "request handler"

initiates a "recovery procedure," and claim 123 of the '267 patent adds the limitation that the

"process handlers" and "task handlers" volunteer to work on a processing job.

### C.    The Dependent Claims Add Nothing Inventive

The dependent claims all cover the same abstract idea as the representative claims, adding

only routine and conventional elements that each relates to distributed processing.[27] These

additional requirements are best summarized as follows:

1.  The handlers volunteer for the processing, and other handlers select from those volunteers.[28]

2.  The handlers are selected based on territory, resources available, or workload considerations.[29]

3.  The handlers generate, communicate, and store state information, requests, and/or messages.[30]

4.  The tasks are assigned to limit the number of accesses or limit the rate of access to a database or storage.[31]

---

[27] *See Content Extraction*, 776 F.3d at 1348 ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary. After conducting its own analysis, the district court determined that PNC is correct that claim 1 of the '855 patent and claim 1 of the '416 patent are representative, because all the claims are "substantially similar and linked to the same abstract idea.").

[28] *See, e.g.*, '959 patent at claims 30, 31, 35, 36; '267 patent at claims 2, 3, 4, 7, 8, 9, 10, 38, 39, 51, 53, 54, 55, 56, 60, 61, 70, 71, 73, 74, 75, 78, 79, 80, 81, 109, 110, 122, 124, 125, 138, 139. This is much like the dangerous military mission often portrayed on film where only soldiers who volunteer are used.

[29] *See, e.g.*, '267 patent at claims 11, 12, 13, 18, 19, 20, 21, 23, 24, 25, 82, 83, 84, 89, 90, 91, 92, 94, 95, 96. This is much like the military selecting forces for a mission based on geographic location (e.g., the Pacific Fleet) or availability (e.g., reserves).

[30] *See, e.g.*, '959 patent at claims 6, 12, 16, 22, 32, 33, 34; '267 patent at claims 5, 6, 36, 37, 39, 76, 77, 107, 108, 126. These requirements are akin to an officer or ship captain keeping a log of events.

[31] *See, e.g.*, '267 patent at claims 14, 15, 16, 17, 85, 86, 87, 88. This is akin to the military restricting access to a resource, like ammunition.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 11
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

5.  The handlers must reside on the same computer, different computers, or different pieces of the same computer.[32]

6.  The request handler receives a request from a client and communicates the result of a processing job to the client.[33]

7.  The process flow includes certain information and/or is defined using a particular format.[34]

8.  The system determines whether there is a fault, error, or timeout, and may initiate a recovery procedure.[35]

9.  The processing jobs and/or task requests have identifiers.[36]

10.  The processing job defines multiple transactions.[37]

Each of these additional requirements comprises only routine and conventional elements relating to distributed processing that add nothing inventive.

---

[32] *See, e.g.*, '959 patent at claims 10, 20, 23, 26, 39, 40, 41, 42, 43; '267 patent at claims 22, 28, 29, 30, 31, 32, 93, 99, 100, 101, 102, 103. This is much like a military order (e.g., take that hill) to be carried out by a particular unit of soldiers (e.g., Charlie Company).

[33] *See, e.g.*, '959 patent at claims 37, 38; '267 patent at claims 26, 27, 41, 63, 97, 98, 112, 128. This sequence is much like when the President gives the military an order and the military gives the President an update on the result.

[34] *See, e.g.*, '959 patent at claims 44, 45, 46, 47, 48; '267 patent at claims 33, 34, 35, 47, 48, 49, 50, 66, 67, 68, 69, 104, 105, 106, 118, 119, 120, 121, 126, 134, 135, 136, 137. In the military, orders are often sent in an encrypted code, like the Enigma code used by Germany in World War II.

[35] *See, e.g.*, '959 patent at claims 2, 3, 4, 5, 7, 8, 9, 13, 14, 15, 17, 18, 19, 24, 25; '267 patent at claims 42, 43, 64, 65, 113, 114, 129, 130. Based on encountering a problem, like the failure of an attack to gain ground, the military may initiate a recovery procedure, such as a retreat.

[36] *See, e.g.*,'267 patent at claims 39, 40, 41, 42, 51, 61, 62, 63, 64, 70, 110, 111, 112, 113, 122, 127, 128, 129, 138, 139. The military has long used identifiers for certain tasks, such as Operation Overlord for the Battle of Normandy in World War II.

[37] *See, e.g.*, *id.* at claims 44, 45, 46, 57, 58, 59, 115, 116, 117, 131, 132, 133. This requirement is akin to the military breaking down one overarching job into multiple tasks, as on D-Day the Allies were tasked with landing on the beach, establishing control of the beach, and then proceeding inland.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ)  — 12
80371386.1 0053837-00608

## II.  ARGUMENT

### A.  Legal Standard

Laws of nature, natural phenomena, and abstract ideas are not patentable.[38] Otherwise, monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary objective of the patent laws.[39]

Accordingly, in applying the § 101 exclusionary principle, courts must distinguish between patents that claim the "building blocks" of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention.[40] To distinguish patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts, courts first determine whether the claims at issue are directed to one of those patent-ineligible concepts.[41] If so, courts then ask "[w]hat else is there in the claims before [them]."[42] To answer the second question, courts "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[43] The Supreme Court characterizes the second step as a "search for an inventive concept," i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to

---

[38] Dkt. No. 213 in *Appistry I*, Order Granting Defendants' Motion for Judgment on the Pleadings at 2 (citing *Alice*, 134 S. Ct. at 2354).

[39] *Id.* at 2 (citing *Alice*, 134 S. Ct. at 2354.

[40] *Id.* at 2 (quoting *Alice*, 134 S. Ct. at 2355).

[41] *Id.* at 2 (quoting *Alice*, 134 S. Ct. at 2355).

[42] *Id.* at 2-3 (quoting *Alice*, 134 S. Ct. at 2355).

[43] *Id.* at 3 (quoting *Alice*, 134 S. Ct. at 2355) (internal quotation marks omitted).

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 13
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

significantly more than a patent upon the ineligible concept itself.[44]

Mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention, meaning that if a patent's recitation of a computer amounts to mere instructions to implement an abstract idea on a computer, the claims fail to be patent eligible.[45] Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of "additional feature" that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.[46]

The Federal Circuit has endorsed deciding invalidity under Section 101 via a Rule 12 motion.[47] This is unsurprising, as determining whether a patent is directed to ineligible subject matter is a question of law.[48] And the Federal Circuit has also endorsed deciding invalidity under Section 101 without engaging in claim construction.[49] Indeed, the Court invalidated the Appistry I patents on a Rule 12 motion without construing the claims first.

### B. Appistry's Patents-in-Suit Are Invalid Under the *Alice* Test

#### i. Appistry's Patents-in-Suit Are Directed to an Abstract Idea

As detailed above, the Court held that the claims of the Appistry I patents were directed to the abstract idea of distributed processing, "akin to the military's command and control system, a

---

[44] *Id.* at 3 (quoting *Alice*, 134 S. Ct. at 2355) (internal quotation marks omitted).

[45] *Id.* at 5-6 (citing *Alice*, 134 S. Ct. at 2358).

[46] *Id.* at 6 (quoting *Alice*, 134 S. Ct. at 2358).

[47] *See, e.g.*, *OIP*, 788 F.3d at 1362 (affirming grant of motion to dismiss); *Content Extraction*, 776 F.3d at 1346 (affirming grant of motion to dismiss); *Ultramercial*, 772 F.3d at 711-12 (affirming grant of motion to dismiss).

[48] *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).

[49] *See Content Extraction*, 776 F.3d at 1349; *see also Ultramercial*, 772 F.3d at 719.

longstanding and intuitive practice used by many large hierarchical organizations that value speed, efficiency, reliability, and accountability."[50] The Appistry II patent claims cover this same abstract idea. Accordingly, they are directed to a patent-ineligible concept.

Appistry cannot establish otherwise. In arguing that the Appistry I patents are not directed to an abstract idea, Appistry relied on *DDR Holdings, LLC v. Hotels.com, L.P.*[51] In *DDR*, the Federal Circuit found that the patent did not cover an abstract idea, noting that "the claimed solution [wa]s necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."[52] Appistry's complaint parrots this language from *DDR*,[53] but here the Court has already held that distributed processing is an abstract idea that does not fall within the *DDR* exception.

Appistry also packs its complaint with dozens of legal conclusions disguised as numbered factual allegations. For instance, paragraph 37 alleges that no claim is directed to "command and control."[54] Paragraphs 27 through 32 allege that the patents claim "new," "novel," and "inventive" distributed computing systems and methods.[55] And paragraphs 39 through 41 allege that none of the claims recite fundamental economic concepts, conventional business practices, or mathematical concepts.[56] Appistry has already unsuccessfully argued that the Court must accept

---

[50] Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings at 4.

[51] 773 F.3d 1245 (Fed. Cir. 2014).

[52] *Id.* at 1257.

[53] Dkt. No. 1 at ¶ 33.

[54] *See id.* at ¶ 37.

[55] *Id.* at ¶¶ 27-32.

[56] *See id.* at ¶¶ 39-41.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 15
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1    such allegations as true. At the June 25, 2015 hearing in Appistry I, Appistry's counsel argued:

2    "All the allegations in our complaint are assumed true for purposes of this motion. . . All those

3    things go to inventive concept, and they are all presumed true for purposes of this motion."[57] But

4    this is not so. The Supreme Court instructed in *Ashcroft v. Iqbal* that courts are not to accept legal

5    conclusions recited in a complaint as true at the Rule 12 stage. The Court pronounced: "the tenet

6    that a court must accept as true all of the allegations contained in a complaint is inapplicable to

7    legal conclusions."[58] This tenet is understandable; without it, Rule 12 would be neutered, and early

8    resolution of cases on the pleadings rendered nearly impossible. For instance, every breach-of-

9    contract plaintiff could greatly reduce the potential for a Rule 12 dismissal by alleging in the

10    complaint that it has a legally-binding contract with the defendant.

11           Appistry also attempts to evade a Rule 12 dismissal through reliance on the declarations of

12    its expert, Dr. Green, in support of many of these allegations. Appistry submitted a declaration

13    from Dr. Green in Appistry I and relied on his opinions at the Rule 12 stage.[59] Though the Court's

14    Order dismissing Appistry I does not specifically reference Dr. Green's opinions, the Court

15    rejected numerous arguments that Appistry had based on Dr. Green's opinions.[60] As in Appistry I,

16

17    _____
     [57] *See* June 25, 2015 Hearing Tr. in Appistry I at 84.

18    [58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

19
     [59] *See* Dkt. No. 155-2 in Appistry I, Decl. of Dr. Green; June 25, 2015 Hearing Tr. in Appistry I at
20    36. Though a credibility determination regarding Dr. Green is unnecessary at this stage, Amazon
     notes that the Superior Court for Quebec in a 2012 case found Dr. Green's testimony "evasive"
21    and "troublesome," and stated that it had "serious cause for concern as to the independence,
     objectivity and probative value" of Dr. Green's opinions. *See* Ex. A, Judgment in *Vidéotron Ltée.
22    v. Bell ExpressVu Ltd. P'ship*, No. 500-17-027275-059 (Québec Super. Ct. July 23, 2012) at ¶¶
     537, 552.

23    [60] *Compare, e.g.*, Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on
     the Pleadings at 4 (rejecting argument that the concepts in the Appistry I patents have no "pre-
24    computing analogue") *with* Dkt. No. 154 in Appistry I, Appistry's Response to Motion to Dismiss
     at 12 n.4 ("Appistry's patents, however, claim computerized inventions that are incapable of being
                                                                                   (continued...)
25

Dr. Green's expert testimony cannot transform the concepts in the Appistry II patents into patentable subject matter. It is well-established that, in evaluating a motion to dismiss, the Court is not bound to credit such "bald assertions, unsupportable conclusions, and opprobrious epithets" included in a complaint.[61]

Indeed, the Court's decision in Appistry I lays to rest any dispute that these allegations in the Appistry II complaint are legal conclusions. Each such allegation rehashes Appistry's arguments that the Court dispatched with in Appistry I. There, the Court held that: (1) the Appistry I patents are directed to the abstract idea of "command and control," (2) Appistry's view that the Appistry I patents claim a new, novel, and inventive system of distributed computing do not render the claims any less abstract, and (3) Appistry's argument that the Appistry I patents were valid because the claims do not recite fundamental economic concepts, conventional business practices, or mathematical concepts is contrary to *Alice*.[62]

### ii.  The Patents-in-Suit Lack an Inventive Concept

The remaining question under *Alice* is whether the claims recite "additional elements" sufficient to "transform" them into a patent-eligible application of the abstract idea.[63] As in Appistry I, they do not.

In Appistry I, the Court held that:

---

(...continued)
performed by a human. M. Green Decl. at ¶¶ 14-16. There is no pre-computer analog for Appistry's high-performance computing technology. *Id.*").

[61] *See In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987)) (affirming grant of motion to dismiss); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (affirming grant of motion to dismiss).

[62] Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings at 3-5.

[63] *Alice*, 134 S. Ct at 2355.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 17
80371386.1 0053837-00608

the claims at issue do no more than simply instruct the practitioner to implement the abstract idea of distributed processing akin to command and control on generic computers, connected through generic networks. The claims' invocation of computers adds no inventive concept because the functions performed by the computers at each step of the process are well-understood, routine, and purely conventional.[64]

Relying on the Federal Circuit's *buySAFE* case, the Court further explained that:

the actual systems and methods claimed—through which efficiency and reliability are achieved—are well understood, routine, and purely conventional, and do not supply an inventive concept separate from the underlying abstract idea. That computers send and receive information over a network "is not even arguably inventive." That computers are capable of dividing a task between two or more linked computers in order to complete the task more quickly and more efficiently is similarly basic. That building internal checks and safeguards into the process to ensure a previous task is adequately completed before moving on to a subsequent task will improve reliability and efficiency is not an inventive concept; rather, it is both conventional and obvious. Claiming those safeguards as being hierarchically implemented by various actors—here, networked computers operating as task directors, mid-level managers, and lower-level workers—is not inventive, and neither is combining or separating the actors' geographic locations to achieve a certain result. Given the ubiquity of computers, this type of wholly generic computer implementation does not supply the "additional feature" required at step two [of the *Alice* test].[65]

This same analysis applies to the claims of the patents-in-suit in this case—they add no inventive

concept, just as in Appistry I. As shown above, the independent claims closely mirror the

independent claims of the invalidated '209 patent, with the same hierarchy of "handlers." The only

additional elements in the Appistry II independent claims fail to add any inventive concept. Rather,

they recite longstanding aspects of the military's command and control system, as explained

above. And the dependent claims add only routine and conventional steps that do not transform the

claimed distributed processing system into a patent-eligible application. Indeed, as explained

---

[64] Dkt. No. 213 in Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings at 7.

[65] *Id.* at 7-8 (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)).

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 18
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

above, each group of dependent claims recites additional elements akin to concepts in the military system of command and control.

As in Appistry I, the claims here do no more than take an abstract idea and "apply it with a computer." They require only generic computers connected through a generic network. As in Appistry I, the patents-in-suit here define the term "computer" as "used generically" to describe any type of computer.[66] And "network" is similarly defined to mean any kind of network.[67] The patents-in-suit thus claim any kind of computer connected to any kind of network for distributed processing. This amounts to nothing more than reciting an abstract idea and applying it with a computer, which *Alice* and its progeny have outlawed.[68]

Indeed, Appistry's complaint here confirms that the Appistry II patents add no inventive concept. The complaint includes the same arguments that Appistry advanced in Appistry I, though disguised as factual allegations. For instance, Appistry alleges in paragraph 29 that the patents claim a new, novel, and inventive system that improves on prior art systems.[69] Appistry also alleges in paragraph 54 that the claimed networked computers are not generic computers.[70] The Court dispatched with these same arguments in Appistry I,[71] and for the same reasons explained above, need not accept them as true.

---

[66] '959 patent at 8:47-51 (emphasis added); '267 patent at 9:1-5 (emphasis added).

[67] '959 patent at 9:12-17 (emphasis added); '267 patent at 9:33-38 (emphasis added).

[68] *Alice*, 134 S. Ct at 2358.

[69] *See* Dkt. No. 1 at ¶ 34.

[70] *See id.* at ¶ 54 ("No claim of the Asserted Patents is limited to or covers generic computer components that perform no more than their basic computer functions.").

[71] Dkt. No. 213 Appistry I, Order Granting Defendants' Motion for Judgment on the Pleadings at 7-8.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 19
80371386.1 0053837-00608

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

1    Accordingly, aside from the abstract idea embedded in the patents-in-suit's claims, the

2    remainder of the claim language comprises the description of routine and conventional steps,

3    accomplished using computer hardware and software recited in purely functional and generic

4    terms. Thus, the patents-in-suit's use of generic computers does not transform the claimed abstract

5    idea into a patentable invention.

6                                                **CONCLUSION**

7    The patents-in-suit claim the same idea that this Court has already held is abstract in

8    Appistry I: "distributed processing akin to the military's command and control system." And, like

9    their parent patents in Appistry I, the patents-in-suit fail to disclose additional elements sufficient

10   to transform the claims into a patent-eligible application of the abstract idea. Accordingly, Amazon

11   respectfully requests that the Court grant Amazon's motion to dismiss, and return the abstract idea

12   of distributed processing through a command and control system to its rightful owner—the public.

13   DATED this 15th day of October, 2015.

14

15                                        Respectfully Submitted,

16                                        FISCH SIGLER LLP

17                                        s/ Alan M. Fisch_____
                                          Alan M. Fisch (pro hac vice)
18                                        alan.fisch@fischllp.com
                                          R. William Sigler (pro hac vice)
19                                        bill.sigler@fischllp.com
                                          Jeffrey Saltman (pro hac vice)
20                                        jeffrey.saltman@fischllp.com
                                          Jennifer K. Robinson (pro hac vice)
21                                        jennifer.robinson@fischllp.com
                                          5301 Wisconsin Avenue NW
22                                        Fourth Floor
                                          Washington, DC 20015
23                                        Telephone: (202) 362-3500

24

25

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 20
80371386.1 0053837-00608

David M. Saunders (pro hac vice)
david.saunders@fischllp.com
FISCH SIGLER LLP
96 North Third Street
Suite 260
San Jose, CA 95112
Telephone: (650) 362-8200

_s/ J. Will Eidson_
Brian C. Park, WSBA No. 25584
brian.park@stoel.com
Vanessa Soriano Power, WSBA No. 30777
vanessa.power@stoel.com
J. Will  Eidson, WSBA No. 45040
will.eidson@stoel.com
 STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7542
Facsimile: (206) 386-7500

Counsel for Defendants

AMAZON.COM, INC. AND
AMAZON.COM WEB SERVICES, INC.

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ)  —  21
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2015 I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

- **Benjamin R. Askew**
  baskew@simonlawpc.com,ipteam@simonlawpc.com
- **Brian G Bodine**
  bodineb@lanepowell.com,slocumn@lanepowell.com,docketing-SEA@lanepowell.com
- **J. Will Eidson**
  jweidson@stoel.com,sea_ps@stoel.com,docketclerk@stoel.com,cmcastro@stoel.com
- **Alan M Fisch**
  Alan.Fisch@fischllp.com,amazon@fischllp.com
- **Robert T. Haar**
  edmofiling@haar-woods.com
- **Michael P. Kella**
  mkella@simonlawpc.com,ipteam@simonlawpc.com
- **Timothy D. Krieger**
  tkrieger@simonlawpc.com,ipteam@simonlawpc.com
- **Brian C Park**
  brian.park@stoel.com,sea_ps@stoel.com,shannon.liberio@stoel.com,docketclerk@stoel.com
- **Vanessa Soriano Power**
  vanessa.power@stoel.com,sea_ps@stoel.com,leslie.lomax@stoel.com,docketclerk@stoel.com
- **Jennifer K. Robinson**
  jennifer.robinson@fischllp.com
- **Jeffrey M. Saltman**
  Jeffrey.Saltman@fischllp.com
- **David M. Saunders**
  david.saunders@fischllp.com
- **Adriane Michelle Scola**
  scolaa@lanepowell.com
- **R. William Sigler**
  Bill.Sigler@fischllp.com
- **Anthony G. Simon**
  asimon@simonlawpc.com,ipteam@simonlawpc.com

DEFENDANTS' MOTION TO DISMISS
(NO. 2:15 -CV-1416-RAJ) — 22
80371386.1 0053837-00608

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

- **Colleen O'Hare Zern**
  czern@haar-woods.com

Dated:  October 15, 2015.

_s/ J. Will Eidson_
James Will Eidson, WSBA No. 45040

**STOEL RIVES LLP**
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542