HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

APPISTRY, INC.,

    Plaintiff,

  v.

AMAZON.COM, INC., et al.,

    Defendants.

CASE NO. C15-1416RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants Amazon.com, Inc. and Amazon Web Services, Inc.'s (collectively "Amazon" or "Defendants") Motion to Dismiss for Invalidity Under 35 U.S.C. § 101 on the grounds that the two patents asserted by Plaintiff Appistry, Inc.[1] ("Appistry" or "Plaintiff") cover ineligible subject matter. *See* Dkt. # 36. Having considered the Parties' arguments, the Court hereby **GRANTS** Amazon's Motion.

## II. BACKGROUND

This case concerns U.S. Patent Nos. 8,682,959 and 9,049,267 (the "'959 Patent" and "'267 Patent," respectively). The '959 Patent is entitled "System and Method for Fault Tolerant Processing of Information Via Networked Computers Including Request Handlers, Process Handlers, and Task Handlers." *See* Compl. Ex. 1 ('959 Patent). The '267 Patent is entitled "System and Method for Processing Information Via Networked

---

[1] While this Motion was pending, Appistry, LLC substituted as Plaintiff. *See* Dkt. # 47.

ORDER – 1

Computers Including Request Handlers, Process Handlers, and Task Handlers." *See id.* Ex. 2 ('267 Patent). Both patents are child patents of U.S. Patent Nos. 8,200,746 and 8,341,209 (the "'746 Patent" and "'209 Patent," respectively). *See* '959 Patent at 1; '267 Patent at 1. The '746 and '209 Patents have since been held to be invalid under 35 U.S.C. § 101. *See Appistry, Inc. v. Amazon.com, Inc.* ("*Appistry I*"), No. C15-311 MJP, 2015 WL 4210890, at *5 (W.D. Wash. July 9, 2015).

The '959 and '267 Patents have the same inventors, figures, and "Detailed Descriptions" as the '746 and '209 Patents. *Compare* '959 Patent & '267 Patent *with* Case No. C15-311MJP, Dkt. # 1-1 ('746 Patent) & Dkt. # 1-2 ('209 Patent). Generally, all four patents relate to using "[a] hive of computing machines . . . to process information." *See* '959 Patent at 8:32-33. To do so, the claimed inventions use a system of "a plurality of networked computers" to "process[] a plurality of processing jobs in a distributed manner." *See* '959 Patent at 31:30-31; '267 Patent at 28:8-9. To do so, the claimed systems enlist "a request handler, a plurality of process handlers, and a plurality of task handlers." *See* '959 Patent at 31:32-34; '267 Patent at 28:10-12.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

ORDER – 2

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV.  ANALYSIS

Before the Court proceeds to whether the '267 and 959 Patents are directed to patent-eligible subject matter, it is necessary to determine whether claim 29 of the '959 Patent and claim 1 of the '267 Patent are representative.  Plaintiff does not agree that the claims are representative.  *See* Dkt. # 38 at 12.  Citing a few minute details between these claims and those at issue in *Appistry I*, Plaintiff argues that *all* claims in the '959 and '267 Patents must be independently reviewed.  But Plaintiff's own comparison of the independent claims in the '959 and '267 Patents reveals just how similar (and representative) claim 29 and claim 1 are.  *See* Dkt. # 39-1.  For example, the claims use practically identical language – including, crucially, the "request handlers," "process handlers," and "task handlers" utilized to distribute work.  The Court finds that the claims are representative[2] and will proceed on that basis.[3]

Section 101 of the Patent Act defines patent-eligible subject matter, providing that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or

---

[2] Certain other independent claims do contain other claim elements.  For example, claims 1, 11, 27, and 28 of the '959 Patent add the limitation that if a fault exists, the process handler or request handler will initiate a recovery procedure.  *See* '959 Patent at 28:6-11, 29:10-16, 30:61-67, 31:21-27.  Similarly, claim 123 of the '267 Patent incorporates the limitation that process handlers "are configured to volunteer for servicing the processing jobs based on their availabilities."  *See* '267 Patent at 39:58-60.

The Court finds that these differences do not make claim 29 of the '959 Patent or claim 1 of the '267 Patent any less representative of the other claims.  Ultimately, all of the independent claims cover systems using the different "handlers" to process information and tasks.

[3] The Federal Circuit has already addressed this issue, and held that a court need not address every asserted claim if the claims of the asserted patents "are substantially similar in that they address little more than the same abstract idea" and the selected claims are representative.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

ORDER – 3

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has, however, recognized that laws of nature, natural phenomena, and abstract ideas are not patentable. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). However, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354. In "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts," courts apply a two-part test. *Alice*, 134 S. Ct. at 2355. Courts must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, then courts must examine "[w]hat else is there in the claims before [them]" by considering "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* The Court has characterized this search as one "'inventive concept' — *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).

The first step in the Court's analysis is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355. Some courts have characterized the first step as distilling "the gist of the claim." *See Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1046 (N.D. Cal. 2015) (citing cases). The *Appistry I* court confronted claims virtually identical to those asserted here and found that they were directed to "the abstract idea of distributed processing akin to the military's

ORDER – 4

command and control system." *See* 2015 WL 4210890 at *2. The Court finds that the claims in the '959 and '267 Patents are also directed to that abstract idea.

As a preliminary matter, Plaintiff simply does not explain how the claims in these patents are any different from those asserted in *Appistry I*. That is not surprising. As discussed, *supra*, the patents share the same terminology and central idea: that of distributing tasks through a hierarchical structure.

To be sure, there are a few differences between the claims in the '959 and '267 Patents and those in the '209 and '746 Patents. However, those differences are minor. For example, the '959 and '267 Patents require that the "process handlers" and "task handlers" be resident on "different networked computers." *See* '959 Patent at 31:34-37; '267 Patent at 28:12-15 ("the process handlers being resident on a plurality of different networked computers, the task handlers being resident on a plurality of different networked computers."). And the '209 and '746 Patents require no such thing. *See* '746 Patent at 26:53-61 ("wherein a plurality of the hive engines within the at least one territory are configured to perform the processing job in a distributed manner such that the processing tasks of the processing job are distributed to a plurality of hive engines within the at least one territory for execution thereby").

The '959 and '267 Patents also differ in that they include the claim element "the processing jobs having a plurality of associated process flows, the process flows including . . . (2) logic configured to define a relationship between the processing tasks of the same process flow." *See* '959 Patent at 31:37-41; '267 Patent at 28:15-19. But that element appears to simply provide for a sequence of delegating tasks. *See* '959 Patent at 24:26-28 ("One embodiment uses a logical hierarchy of hive engines for delegation of performing administrative and/or other hive related tasks").

Finally, as to the claim elements calling for receiving, storage, or communicating data, those are "undisputably well-known" and do not distinguish the claims of the '959 and '267 Patents from those found to be directed to abstract ideas. *See Content*

ORDER – 5

*Extraction*, 776 F.3d at 1347 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *see also Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112-13 (D.D.C. 2015) (collecting cases and holding that "[t]he abstract concept of collecting, storing, and retrieving data simply is not patent-eligible").

Still, Plaintiff contends that the claims here are not directed to abstract ideas, but instead to a new computer (or, more specifically, a more efficiently and reliably distributed configuration of multiple computers), resulting in better performance. *See* Dkt. # 38 at 15. There is at least some basis for this argument. The Federal Circuit held that where a "claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," it is not necessarily directed to an abstract idea. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

But the Court disagrees with Plaintiff's application here. Plaintiff relies heavily on the specification of the '959 Patent to show that the patents are directed to such a new computer. *See id.* at 16. That same portion of the specification was first presented – verbatim – in the '746 and '209 Patents, which were of course invalidated in *Appistry I*. *See* '746 Patent at 5:11-15; '209 Patent at 5:15-19.

Even beyond that, however, it is clear that the networked computers utilized in the '959 and '267 Patents are merely generic computers[4] tasked with performing generic functions. The specification itself clarifies that "[t]he term 'computer' is used generically

---

[4] The Court also disagrees with Plaintiff's contention that the machine or transformation test is helpful in this case. *See* Dkt. # 38 at 23-24. "[T]hat test may be a useful and important clue or investigative clue" in determining "whether an invention is patent-eligible." *See Bilski*, 561 U.S. at 594. However, even in the context of this test, "after *Alice,* there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *DDR Holdings*, 773 F.3d at 1256 (citing *Alice*, 134 S. Ct. at 2358). "The bare fact that a computer exists in the physical rather than purely conceptual realm 'is beside the point.'" *Id.* Similarly, here, the fact that the inventions here necessarily apply to generic computers is irrelevant because there simply is no inventive concept embodied within them.

ORDER – 6

herein to describe any number of computers, including, but not limited to personal computers, embedded processing elements and systems . . . ."  *See* '959 Patent at 8:47-51; '267 Patent at 9:1-5.  Nor are the claimed systems or methods limited to a particular type of process or task – the patents specify that "[t]he terms 'task' and process are used generically herein to describe any type of running program, including, but not limited to a computer process, task, thread, executing application, operating system, user process, device driver, native code, machine or other language, etc. . . ."  *See* '959 Patent at 8:57-66; '267 Patent at 9:11-20.  In other words, the claims are not directed to solving a technological problem or solve a challenge particular to a specific environment, nor do they contemplate some "new" type of computer.

The Court also rejects Plaintiff's argument that the claims here are not directed to abstract ideas because they do not claim solutions to mathematical equations or business problems.  *See* Dkt. # 38 at 17-18.  The *Appistry I* court already rejected this argument for reasons this Court also finds convincing.  Simply put, "the operative question is whether or not the patent claims are directed toward an abstract idea, and *not* whether or not the invention could be classified into one of Plaintiff's three categories."  *See Appistry I*, 2015 WL 4210890 at *2 (citing *Alice*, 134 S. Ct. at 2356-57).

Plaintiff also contends that the claims here are not directed to abstract ideas because they cannot be performed by humans.  *See* Dkt. # 38 at 17-18.  But the fact that inventions here are implemented on computers or only exist in the computing realm does not save them.  *See Bancorp Servs., L.L.C. v .Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (citing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010)) ("Bancorp seeks to analogize its case to *SiRF,* contending that a computer 'plays a significant part' in its claims because they require 'precise and repetitive calculation.' . . . That misses the point."); *see also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (citing *Bilski*

ORDER – 7

*v. Kappos*, 561 U.S. 593, 610 (2010)) ("the category of patent-ineligible abstract ideas is not limited to methods that can be performed in the human mind.").

Having determined that the '959 and '267 Patents' claims are "directed to" an abstract idea, the Court must next determine if its claims are nevertheless patentable because they contain an "inventive concept" sufficient to "transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. To do so, courts are instructed to consider the elements of the claims – both individually and in an ordered combination – to assess whether the elements transform the nature of the claims into a patent-eligible inventive concept. *See Content Extraction*, 776 F.3d at 1347.

The Court must disregard "'well-understood, routine, conventional activit[ies]' previously known to the industry" at this step of the analysis. *See Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1299) (alterations in original). "A conventional element may be one that is ubiquitous in the field, insignificant or obvious." *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 992 (C.D. Cal. 2014) (citing *Mayo*, 132 S. Ct. at 1298). Such a "conventional element may also be a necessary step, which a person or device must perform in order to implement the abstract idea." *Id.* Although "conventional elements and prior art may overlap," "conventional elements do not constitute everything in prior art." *Id.*

The Court finds that whether viewed individually or as an ordered combination, the claims of the '959 and '267 Patents do not contain an inventive concept.

As discussed, *supra*, the claims here do little more than task generic computers with generic functions. Even the central idea of the claims – the use of a "network" of computers – uses a generic network. *See* '959 Patent at 9:12-20 ("the terms 'network' and 'communications mechanism' are used generically herein to describe one or more networks, communications mediums or communications systems, including, but not limited to the Internet, private or public telephone, cellular, wireless, satellite, cable, local area, metropolitan area and/or wide area networks . . . etc."); '267 Patent at 9:33-41.

ORDER – 8

Simply put, the claims here simply provide for completing a task or process by distributing it downward via a hierarchical series of "handlers" located on generic computers spread throughout a generic network. There is nothing inventive about that.

But Plaintiff holds fast to its contention that as an ordered whole, the claims in the '959 and '267 Patents improve computer function by allowing increased "availability, scalability, performance, and reliability." *See* Dkt. # 38 at 23. That may be possible, but simply limiting this abstract idea of distributed processing to the networked computer field does not alter the analysis or render the idea any more inventive than before. *See buySAFE, Inc.*, 765 F.3d at 1354 (quoting *Alice*, 134 S. Ct. at 2358) ("Neither 'attempting to limit the use of [the idea] to a particular technological environment' nor a 'wholly generic computer implementation' is sufficient" to add an inventive concept").

In fact, the *Appistry I* court addressed the same argument – that the inventions were technological improvements to distributed computing because they permitted improved speed, efficiency, and reliability – and rejected it. *See* 2015 WL 4210890 at *4. The court found that "the actual systems and methods claimed-through which efficiency and reliability are achieved-are well understood, routine, and purely conventional, and do not supply an inventive concept separate from the underlying abstract idea." *Id.* That analysis remains true for the '959 and '267 Patents.

The system claimed by the '267 Patent, for example, uses several networked computers separated into tiered "handlers," including a "request handler," "process handlers," and "task handlers." *See* '267 Patent at 28:7-19. The processing jobs handled by this system have discrete tasks, as well as a sequence for processing those tasks. *See id.* at 28:15-19. The request handler is instructed to receive a job request, store information about that job, and then to communicate it to process handlers. *See id.* at 28:20-24. The process handlers are instructed to analyze information to determine whether any tasks remain to be done and the task handlers are programmed to perform processing tasks. *See* '267 Patent at 28:25-41.

ORDER – 9

None of this is inventive. Receiving, storing, and sending task data are, of course, "'well-understood, routine, conventional activit[ies]' previously known to the industry." *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2359)); *see also buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). The other tasks delegated to the process handlers and task handlers do little more than simply check if any tasks remain to be done (*see* '267 Patent at 28:25-39) or simply (and without elaboration) do the assigned task (*see* '267 Patent at 28:40-41). *See Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-CV-00570-BLF, 2015 WL 1133244, at *10 (N.D. Cal. Mar. 10, 2015) (finding that claim limitation that instructed that "merely instructs that the workflow be verified" did not add an inventive concept). These are not inventive and do little more than simply state the abstract idea – distributed processing through a hierarchical, military-like command structure – and add the words "apply it with a computer." *See Alice*, 134 S. Ct. at 2358.

Finally, the Court addresses several procedural issues that Plaintiff raises.[5]

First, as Plaintiff notes, its Complaint includes the declaration of Dr. Matthew Green (or other allegations regarding the same topics), who opines that the claims of the '959 and '267 Patents cover "a new and novel mechanism, system, and/or method over the prior art for distributed computing." *See* Dkt. # 1-3 (Green Decl.) ¶¶ 13-16. Plaintiff argues that the Court must accept these conclusions as true. *See* Dkt. # 38 at 19-20. That is nonsense. *See Iqbal*, 556 U.S. at 678-79 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citing *Sprewell v. Golden State*

---

[5] Plaintiff also argues that the inventions do not preempt the entire abstract idea. *See* Dkt. # 38 at 24-25. Even if that position is true, it is irrelevant. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

ORDER – 10

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").[6]

Second, Plaintiff argues that a "clear and convincing" standard applies to the § 101 inquiry. *See* Dkt. # 38 at 8-9. That is not necessarily incorrect. *See Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 938 (N.D. Cal. 2015) (citing *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007)). And many courts have recognized a split in authority on this question. *See Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, No. 16-CV-00925-LHK, 2016 WL 3196657, at *7 (N.D. Cal. June 9, 2016) (collecting cases). But in this Court's view, the standard is irrelevant as the outcome would be the same under any standard. Under either standard, Defendants have clearly shown that the claims of the '959 and '267 Patents are directed to an abstract idea.

///

///

///

---

[6] Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention.

ORDER – 11

Finally, Plaintiff suggests that claim construction is necessary before the Court can decide the instant Motion. *See* Dkt. # 38 at 11. The Court disagrees. Federal Circuit precedent clearly provides that courts may determine whether claims are directed to patent-eligible subject matter at the pleading stage without conducting claim construction or permitting the parties to conduct discovery. *See Content Extraction*, 776 F.3d at 1349 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014); *Bancorp*, 687 F.3d at 1273).

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Amazon's Motion. Dkt. # 36. Accordingly, the Court dismisses Appistry's complaint with prejudice.

DATED this 19th day of July, 2016.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12